John J. RYAN

v.

CITY OF PROVIDENCE et al.

No. 2009–311–Appeal.

Supreme Court of Rhode Island.

Jan. 6, 2011.

Joseph F. Penza, Jr., Esq., Warwick, for Plaintiff.

Anthony F. Cottone, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

Before the Court is the appeal of John J. Ryan, a retired captain of the Providence

Police Department. Ryan asks us to vacate a declaratory judgment of the Superior Court in which the trial justice held (1) that the city's Honest Service Ordinance of the Providence Code of Ordinances (HSO) does not require that there be a criminal conviction before action properly may be taken to reduce or revoke a retiree's pension, and (2) that any action taken by the city's retirement board (the board) pursuant to the ordinance will be reviewed by the Superior Court with deference toward the board's findings of fact. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

## Facts and Travel

There can be no argument that in the recent past, the municipal government in the city of Providence has been plagued by scandal and corruption. In the aftermath of a wide-ranging corruption probe, dubbed "Operation Plunder Dome" by the United States Attorney, a number of city officials were convicted in federal court of various acts of malfeasance.[1] During the course of the federal investigation, retired police chief Urbano Prignano, Jr. described a nefarious scheme within the police department in years past in which applicants for promotion were supplied surreptitiously with source materials for written examinations. In his statements about this sordid affair, Prignano implicated the plaintiff. Although Ryan neither was charged with any criminal wrongdoing, nor admitted any involvement in the scheme, the city, although allowing the issue to fester for several years, did not allow it to wither and die.[2]

Ryan began receiving monthly pension benefits when he retired from the police department on June 11, 2002. Six years later, on October 21, 2008, the board served Ryan with notice of its intention to hold a pre-deprivation hearing to consider a reduction or revocation of his retirement benefits.[3] As grounds, the board alleged that Ryan v̇iolated the city's HSO during his tenure with the police department when he (1) "received under-priced or free vehicles, vehicle repairs, and other gifts from [a city vendor] while responsible for supervising [that vendor's] contract with the City;" (2) "participated in corrupting the Providence Police Department promotional processes by assisting certain favored officers in obtaining promotions and so-called source sheets for promotional examinations * * *;" and (3) "participated in corrupting the Providence Police Department promotional processes by accepting a source sheet * * * in advance of * * * taking the 1996 Captain promotional examination."

On November 18, 2008, Ryan filed suit in Superior Court seeking a declaratory judgment concerning the applicability of the HSO. In his complaint, Ryan asserted that the HSO requires an employee be convicted of or plead guilty or nolo contendere to a crime related to his public employment before the board can convene a reduction or revocation hearing. He further sought an injunction to prevent the board from proceeding with his hearing until the court could determine the applicability of the HSO.[4]

1. See, e.g., United States v. Cianci, 218 F.Supp.2d 232 (D.R.I.2002) (regarding the convictions of Providence Mayor Vincent Cianci and city official Frank Corrente).

2. Indeed, in his submission to this Court, Ryan "adamantly den[ies] the allegations."

3. The notice does not refer to the Honest Service Ordinance of the Providence Code of Ordinances (HSO) specifically, but subsequent facts make clear that the HSO was the ordinance precipitating the board's action.

4. The complaint also alleged that the hearing officer assigned by the board to preside at

To address what it considered to be common legal questions, the court consolidated Ryan's case with those of several individuals who already had had their pensions revoked or substantially reduced by the board, namely Anthony Annarino, Frank Corrente, Kathleen Parsons, and Urbano Prignano.[5] The board agreed to stay the hearing process pending the trial court's determination of questions of first impression pertaining to the HSO: (1) Is a criminal conviction a prerequisite to action by the board in all cases?; (2) Does the Superior Court have jurisdiction to hear an action brought by the board to enforce its recommendations under the HSO?; (3) If that court does have jurisdiction, should it apply a deferential or a *de novo* standard of review when reviewing decisions made by the board?

The trial justice issued his decision on September 8, 2009.[6] He held that an employee's pension could be reduced or revoked if he failed to give "honorable service," and therefore, that a criminal conviction was not a necessary condition to reduce or revoke an employee's pension under the HSO. He further determined that the Superior Court had jurisdiction over actions brought under the HSO, and that once the board filed a civil case in Superior Court under § 17–189.1(a)(5) of the HSO, deference would be given to the board's decisions.[7]

On appeal, Ryan asks this Court to reverse the decision of the trial justice and hold that a conviction is a prerequisite for the board to hold a hearing to seek to reduce or revoke an employee's pension, and that the Superior Court must review the board's findings *de novo* in civil actions brought under § 17–189.1(a)(5) of the HSO.[8] There are no material facts in dispute, and we are called upon to interpret § 17–189.1 of Providence's Code of Ordinances.

### Standard of Review

■ This Court, as the final arbiter on questions of statutory construction, reviews such questions *de novo*. *D'Amico v. Johnston Partners*, 866 A.2d 1222, 1224 (R.I.2005); *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001). "When interpreting an ordinance, we employ the same rules of construction that we apply when interpreting statutes." *Ruggiero v. City of Providence*, 893 A.2d 235, 237 (R.I.2006); *accord Mongony v. Bevilacqua*, 432 A.2d 661, 663 (R.I.1981).

■ When we construe a statute or an ordinance, "our ultimate goal is to give effect to the purpose of the act as intended

---

Ryan's hearing had a conflict of interest, and that the board had delayed unreasonably in waiting six years to take action. Neither issue is raised in this appeal.

**5.** At the time of the trial justice's decision, the board had initiated civil actions in Superior Court against all four of these former employees, under § 17–189.1(a)(5) of the HSO.

**6.** The order accompanying his decision was entered on October 19, 2009. Before that order was entered, the board reissued its notice to hold a pre-deprivation hearing. Ryan sought a stay of the lower court's order pending appeal to this Court. When that stay was denied, Ryan filed a motion under Article I,

Rule 8(a) of the Supreme Court Rules of Appellate Procedure. On November 4, 2009, we entered an order granting Ryan's motion to stay the Superior Court order and enjoined further proceedings by the board pending additional orders of this Court.

**7.** Because Ryan sought declaratory judgment as to the applicability of the HSO, the trial court's ruling constituted a final judgment, allowing him to appeal.

**8.** Mr. Prignano also appealed the trial justice's ruling and sought to consolidate his appeal with Ryan's appeal. This Court denied that motion on December 17, 2009.

by the Legislature." *D'Amico,* 866 A.2d at 1224 (quoting *Webster,* 774 A.2d at 75 ). We must "determin[e] and effectuat[e] that legislative intent and attribut[e] to the enactment the most consistent meaning." *In re Almeida,* 611 A.2d 1375, 1382 (R.I. 1992). "That intent is discovered from an examination of the language, nature, and object of the statute." *Berthiaume v. School Committee of Woonsocket,* 121 R.I. 243, 247, 397 A.2d 889, 892 (1979). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I. 1996). "This is particularly true where the Legislature has not defined or qualified the words used within the statute." *D'Amico,* 866 A.2d at 1224 (quoting *Markham v. Allstate Insurance Co.,* 116 R.I. 152, 156, 352 A.2d 651, 654 (1976) ). In giving words their plain-meaning, however, we note that this "approach is not the equivalent of myopic literalism." *In re Brown,* 903 A.2d 147, 150 (R.I.2006). "When we determine the true import of statutory language, it is entirely proper for us to look to 'the sense and meaning fairly deducible from the context.' " *Id.* (quoting *In re Estate of Roche,* 16 N.J. 579, 109 A.2d 655, 659 (1954) ).. As we previously have held, it would be "foolish and myopic literalism to focus narrowly on" one statutory section without regard for the broader context. *In re Brown,* 903 A.2d at 150.

■■ Thus, in interpreting a statute or ordinance, we first accept the principle that "statutes should not be construed to achieve meaningless or absurd results." *Berthiaume,* 121 R.I. at 247, 397 A.2d at 892. "[W]e [then] consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." *Sorenson v. Colibri Corp.,* 650 A.2d 125, 128 (R.I.1994); *accord Bailey v. American Stores, Inc./Star Market,* 610 A.2d 117, 119 (R.I.1992); *Stone v. Goulet,* 522 A.2d 216, 218 (R.I.1987).

## I

## Defining Honorable Service

### A

### Providence's Honorable Service Ordinance

To interpret the ordinance, the endeavor that is our task in this appeal, we begin by quoting it in its entirety. The ordinance, § 17–189.1,—"Honorable service, revocation or reduction of retirement benefits of employees committing crime related to public employment," says:

"(a) *General provisions.*

"(1) Payment of an employee's retirement allowance or annuity or other benefit or payments as provided in chapter 17 shall be for honorable service only.

"(2) For purposes of this section, 'crime related to his or her public employment' shall mean any of the following:

"a. The committing, abiding or abetting of an embezzlement of public funds;

"b. The committing, aiding or abetting of any felonious theft by a public employee from his or her employer;

"c. Bribery in connection with employment of a public employee; and

"d. The committing of any felony by a public employee who willfully, and with the intent to defraud, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of power, rights, privileges, duties,

or position of his or her public office or employment.

"(3) For purposes of this section, 'public employee' or 'employee' shall mean any current or former city elected official, or any appointed official or employee of the city, or of a city board, commission or agency, who is otherwise entitled to receive a retirement allowance or annuity or other benefit or payment of any kind pursuant to chapter 17.

"(4) *Revocation or reduction authorized.* Notwithstanding any other provision of law, any retirement allowance or annuity or other benefit or payment of any kind to which an employee is otherwise entitled to under chapter 17 shall be revoked or reduced in accordance with the provisions of this section if such employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment. Any such conviction or plea shall be deemed to be a breach of the employee's contract with his or her employer.

"(5) *Hearing; civil action.* Whenever any employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment, the retirement board shall conduct a meeting, with the employee having the opportunity to be heard, to determine if a recommendation of revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under this chapter is warranted. If the retirement board determines that revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under this chapter is warranted, the retirement board shall

initiate a civil action in the superior court for the revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under chapter 17.

"(6) For purposes of this section, 'pleads guilty or nolo contendere' shall not include any plea of guilty or nolo contendere which does not result in a conviction by virtue of G.L.1956 § 12–10–12 or 12–18–3, as amended."

## B

### Arguments of the Parties

On appeal, Ryan makes two arguments with regard to the interpretation of the HSO. First, he argues that the statute's provisions are unambiguous and, when read together, necessitate the conclusion that a conviction is required before the board may pursue the reduction or revocation of a retiree's pension.[9] It is those sections that describe criminal convictions, he asserts, that are intended to instruct the board about when the honorable service requirement has not been met and that direct the board to take action against the retiree's pension. Moreover, he suggests that none of the provisions in the HSO grants the board the discretion to determine what constitutes a failure to give honorable service, and that those conditions, therefore, are limited to the convictions that are delineated in the ordinance. Thus, Ryan argues that the hearing process and subsequent civil action provided for in the ordinance are permitted only when there is a conviction.

Ryan also urges the Court to consider the legislative history that accompanied the city's adoption of the HSO, including

---

9. Ryan is joined in many of his assertions by the amici curiae. The Court takes this opportunity to thank the amici, Lodge No. 03 of the Fraternal Order of Police and Local No. 799 of the International Association of Firefighters, A.F.L., C.I.O., for their briefs in this case.

the prior common law, comparable state legislation, and the city council debate preceding the enactment of the ordinance.[10] However, we are of the opinion that the intent of the council can be deduced readily from the plain meaning of the ordinance, and therefore we need not delve into the legislative history. *See First Republic Corp. of America v. Norberg,* 116 R.I. 414, 418, 358 A.2d 38, 41 (1976) ("Legislative history is properly used as an aid to construction only when the statute is itself ambiguous. When the language of a statute expresses a clear and sensible meaning, this court will not look beyond it."); *Podborski v. William H. Haskell Manufacturing Co.,* 109 R.I. 1, 8, 279 A.2d 914, 918 (1971); *Reardon v. Hall,* 104 R.I. 591, 595, 247 A.2d 900, 902 (1968).

The city, on the other hand, asserts that the provisions of the ordinance should be read disjunctively, thereby permitting board action if the retiree *either* failed to provide "honorable service" by engaging in inappropriate conduct resulting in less than a conviction, *or* is convicted of a crime related to his or her employment. This is a syllogistic exercise in which we decline to participate.

The city then argues that honorable service should be understood broadly to include any conduct the city might consider dishonorable and that the plain meaning of the term can be drawn from a variety of sources. It draws our attention to the public ethics provision of the Rhode Island Constitution. That provision says:

"The people of the State of Rhode Island believe that public officials and employees must adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable and responsive, avoid the appearance of impropriety and not use their position for private gain or advantage. Such persons shall hold their positions in good behavior." R.I. Const., art. 3, sec. 7.

However, adopting this as the definition of honest services in the context of this ordinance would force us to engage in mental gymnastics that run counter to our principles of statutory interpretation.

The city also asserts that the first provision of the ordinance should be read with regard to this Court's decision in *In re Almeida.* In *In re Almeida,* 611 A.2d at 1377, we confronted the alarming misconduct of a retired justice of the Superior Court. In doing so, we articulated a common-law requirement of honorable service as a condition precedent to the drawing of a pension. We held that "[h]onorable service is a necessary prerequisite in all areas of public service and for the vesting of pension rights." *Id.* "A requirement of honorable service is commonsensical in relation to the trust and confidence vested in those persons holding positions in public service * * *." *Id.* at 1383. *In re Almeida,* decided before the adoption of this ordinance, is inapposite to Ryan.[11] *See id.*

10. The defendant also urges us to consider common-law principles and comparable state legislation but draws a different conclusion from those same sources. The state legislation, the Rhode Island Public Employee Pension Revocation and Reduction Act ("PEPRRA"), was enacted in 1992. "The General Assembly enacted PEPRRA * * * to provide the Retirement Board with a statutory mechanism to initiate a civil action to revoke or reduce a public official/employee's retirement benefits whenever such person, after January 1, 1993, 'is convicted of or pleads guilty or nolo contendere to any crime related to his or her public office or public employment.' [G.L.1956 §] 36–10.1–3(b), as enacted by P.L. 1992, ch. 306, art. 1, § 8." *Retirement Board of the Employees' Retirement System of Rhode Island v. DiPrete,* 845 A.2d 270, 279–80 (R.I. 2004).

11. *In re Almeida* can be additionally distinguished from this case because Almeida *ad-*

As the General Assembly did when it enacted PEPRRA, the city council's decision to adopt its own honest-services ordinance signaled a departure from the common-law rule. *See Smith v. Retirement Board of the Employees' Retirement System*, 656 A:2d 186, 189–90 (R.I.1995). We further note that *In re Almeida* does not, in fact, include a definition of honest services, as the city suggests, but merely embraces a New Jersey court's incomplete list of factors that could be considered when revoking an employee's pension. *In re Almeida*, 611 A.2d at 1387 (citing *Uricoli v. Board of Trustees, Police and Firemen's Retirement System*, 91 N.J. 62, 449 A.2d 1267, 1275–76 (1982)).

The city asserts that reading these initial and later sections of the ordinance separately is appropriate and does not result in redundancies because § 17–189.1(a)(4) and (a)(5) of the HSO simply mandates that the board *shall* take action in the case of criminal convictions and describe what that action will be. We are not persuaded by this argument. It is illogical that the ordinance would spell out the nature of the board's action in detail in one context but be silent in another context. Such a reading would fly in the face of our well-established principles of statutory interpretation. *See In re Brown*, 903 A.2d at 150; *Sorenson*, 650 A.2d at 128–29; *Bailey*, 610 A.2d at 119; *Stone*, 522 A.2d at 218. Rather, when it enacted the ordinance, the city council limited the board's actions to those explicitly described by the language of the legislation. That is, that a hearing shall be pursued in the face of a municipal employee's criminal conviction for a crime related to his or her employ-

ment. Although the city could have drafted an ordinance with a broader definition of "honorable service," it did not do so; and we are limited in our reading of the ordinance to the language the city included in the HSO.

## C

### Interpreting Providence's Honorable Service Ordinance

In interpreting the provisions of this ordinance, we begin by giving the terms contained in it their plain and ordinary meaning. *See Accent Store Design, Inc.*, 674 A.2d at 1226. In doing so, however, we cannot simply focus on each term or provision in isolation. *See In re Brown*, 903 A.2d at 150. Instead, we must also consider the meanings that are consistent with the enactment as a whole. *See In re Almeida*, 611 A.2d at 1382; *Berthiaume*, 121 R.I. at 247, 397 A.2d at 892. In addition, we recall a noted canon of statutory construction, the whole act rule.[12] It requires that we consider the entirety of a statute or ordinance, rather than view specific provisions in isolation. *Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (holding that it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative"); *see Sorenson*, 650 A.2d at 128–29; *Bailey*, 610 A.2d at 119; *Stone*, 522 A.2d at 218.

The term "honorable service" is mentioned but twice in the ordinance, once in the title and once in § 17–189.1(a)(1) of the HSO. If we follow the city's argument and disaggregate these two parts from the subsequent sections of the ordinance, we

---

mitted the acts of misconduct. *See In re Almeida*, 611 A.2d 1375, 1379 n. 3 (R.I.1992). His culpability, therefore, no longer was in question.

12. For a discussion of the whole act rule and its application in a variety of cases, see James J. Brudney & Corey Ditslear, *Canons of Construction and the Elusive Quest for Neutral Reasoning*, 58 Vand. L.Rev. 1 (2005).

would render the remainder of the ordinance surplusage.[13] Indeed, to say that "honorable service" in the context of this ordinance means something more than the convictions articulated in subsequent sections would be duplicative. Without a doubt, a criminal conviction for a crime related to one's employment meets the definition of failing to render "honorable service." As such, we view "honorable service" in § 17–189.1(a)(1) as an aspirational statement that is further contextualized by the sections that follow it.

In the HSO, the city set out certain crimes that define a failure to render honorable service. In reading those provisions, we are mindful of the oft-quoted maxim *"expressio unius est exclusio alterius,"* ("the expression of one thing is the exclusion of another"). Black's Law Dictionary 1830 (9th ed. 2009). The city council included in the ordinance an explicit list of activities that constitute a crime related to one's employment, namely the embezzlement of public funds, felonious theft by a public employee from his or her employer, bribery in connection with employment

of a public employee, and any felony by a public employee who willfully, and with the intent to defraud, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of power, rights, privileges, duties, or position of his or her public office or employment. If the city intended for honorable service to be interpreted more expansively than that, it would not have failed to define it as such, nor would it have articulated such a limited and very specific list.

We further are persuaded that the ordinance confines itself only to the enumerated criminal convictions because when it enacted the ordinance, the city carefully excluded "any plea of guilty or nolo contendere which does not result in a conviction" from the definition of "pleads guilty or nolo contendere." By including such a provision, the ordinance clearly conveys that the board has no authority to take action in those instances in which the employee's transgression results in a plea that does not result in a conviction.[14] It

---

13. *Cf. United States v. Menasche,* 348 U.S. 528, 539, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (declining to consider specific sections of the Immigration and Nationality Act in isolation because doing so would "emasculate an entire section").

14. Section 17–189.1(a)(6) of the HSO says:
"For purposes of this section, 'pleads guilty or nolo contendere' shall not include any plea of guilty or nolo contendere which does not result in a conviction by virtue of G.L.1956 § 12–10–12 or 12–18–3, as amended."
Those state law provisions exclude nolo contendere pleas and some guilty pleas from constituting convictions if the defendant is sentenced to probation. General Laws 1956 § 12–10–12 provides in pertinent part:
"(a) * * * any judge of the district court or superior court may place on file any complaint in a criminal case other than a complaint for the commission of a felony or a

complaint against a person who has been convicted of a felony or a private complaint.
" * * *
"(c) In the event the complaint was originally filed under this section subsequent to the defendant's plea of guilty or nolo contendere to the charges, the court, if it finds there to have been a violation, may sentence the defendant. * * * If no action is taken on the complaint for a period of one year following the filing, the complaint shall be automatically quashed and destroyed. * * * No criminal record shall result; provided, that in any civil action for a tort, a plea of guilty or a finding of guilty should be admissible notwithstanding the fact that the complaint has been filed."
General Laws 1956 § 12–18–3(a) provides:
"Whenever any person shall be arraigned before the district court or superior court and shall plead nolo contendere, and the court places the person on probation pursu-

would be utterly absurd to explicitly exempt conduct not resulting in a conviction in § 17–189.1(a)(6), yet include it within the meaning of subsection (a)(1). Such an illogical interpretation is not permitted by our rules of statutory construction.

Therefore, after applying our well-known rules of statutory construction to the HSO, we conclude that the ordinance is unambiguous, and that there must be a criminal conviction for a crime related to one's employment before the board can take action to reduce or revoke that employee's pension.

## II

### The Standard of Review in the Superior Court

The second issue confronting us in this appeal is whether, upon the filing of a civil action based on § 17–189.1(a)(5) of the HSO, the Superior Court should give deference to the board's decisions on factual matters or provide employees with a *de novo* hearing. Our ruling today regarding the applicability of the pension-revocation provision of the HSO with respect to an employee not convicted of one of the enumerated crimes renders it unnecessary for us to address this issue at this time.

### Conclusion

For the reasons stated above, we vacate the judgment of the Superior Court. The papers in this case shall be returned to that court.

ant to § 12–18–1, then upon the completion of the probationary period, and absent a violation of the terms of the probation, the plea and probation shall not constitute a conviction for any purpose. Evidence of a plea of nolo contendere followed by a period of probation, completed without violation of the terms of the probation, may not be introduced in any court proceeding, except that records may be furnished to a sentencing court following the conviction of an individual for a crime committed subsequent to the successful completion of probation on the prior offense."