**Supreme Court**

No. 2012-155-Appeal.

(PC 11-2304)

John A. Zambarano et al.             :

            v.                        :

The Retirement Board of the Employees'    :
Retirement System of the State of Rhode   :
            Island.                       :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

John A. Zambarano et al.                    :

                    v.                    :

The Retirement Board of the Employees'    :
Retirement System of the State of Rhode   :
                    Island.               :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  Yet again, we are called upon to resolve a dispute stemming from the consequences of public corruption.  In this appeal, the Retirement Board of the Employees' Retirement System of the State of Rhode Island (defendant or board) asks us to decide whether the trial justice erred in finding that it could not refuse a demand for reimbursement of retirement contributions to John A. Zambarano (plaintiff or Zambarano).  This case came before the Supreme Court for oral argument on February 6, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

On August 19, 2010, a federal grand jury indicted Zambarano on eight felony counts relating to his unethical conduct as a member of the North Providence Town Council.[1] Zambarano pled guilty to all counts on March 1, 2011, and was sentenced to a term of imprisonment on May 17, 2011. On the day of his sentencing, an order of forfeiture entered in the United States District Court for the District of Rhode Island which required Zambarano to forfeit $46,000 to the federal government. According to the board, this order, which was also entered as a money judgment against Zambarano, "represents the amount of bribe money which [he] and his co-defendants received in exchange for agreeing to perform official acts as [members] of the North Providence Town Council." Zambarano was also ordered to pay a special assessment of $800 and a fine of $10,000.

On February 4, 2011, about one month before Zambarano pled to the charges, he resigned from his position at the Rhode Island Department of Corrections (DOC). He had been employed as a janitorial/maintenance supervisor at the DOC for approximately eight years and nine months, during which time he contributed $30,554.20 to the Employees' Retirement System of Rhode Island (ERSRI). Over his approximately thirteen years and two months as a member of the North Providence Town Council, he had also contributed $5,490.50 to the Municipal Employees' Retirement System (MERS). Both ERSRI and MERS are administered by the board. See G.L. 1956 § 36-8-4.

---

[1] In a separate indictment, Zambarano was also charged with other crimes which did not relate to his conduct as a member of the town council. Those charges are not at issue in this appeal.

On the day he resigned from his position at the DOC, Zambarano sent a letter to the DOC requesting a refund of his contributions to ERSRI. In a letter dated April 18, 2011, the board responded to Zambarano's demand as follows:

> "In light of your plea agreement and the potential monetary judgments to be entered against you, pursuant to the Rhode Island Public Employee Pension Revocation and Reduction Act, [G.L. 1956 chapter 10.1 of title 36,] it is our opinion that you are not entitled to a return of contributions. Consequently, at this time we cannot process your request."

Soon after, on April 25, 2011, Zambarano filed a complaint in Superior Court seeking declaratory relief, injunctive relief, and monetary damages against the board.[2] He alleged that G.L. 1956 § 36-10-8 entitled him to a refund of the contributions he had made to ERSRI.[3] In a motion filed on April 27, 2011, Zambarano contended that the board's refusal to return those contributions amounted to conversion and breach of its fiduciary duty. He cited G.L. 1956 § 36-10.1-4(c) in support of his argument that the board was obligated to return his contributions to him. Section 36-10.1-4(c) provides as follows:

> "[N]o payments in return of contributions shall be made or ordered unless and until the [S]uperior [C]ourt determines that the public official or public employee whose retirement or other benefits or payments have been revoked or reduced under this chapter has satisfied in full any judgments or orders rendered by any court of competent jurisdiction for the payment of restitution for losses incurred by any person as a result of the subject crime related to public office or public employment."

---

[2] Zambarano named the fifteen individuals who serve on the board as defendants (in their official capacities).

[3] General Laws 1956 § 36-10-8 provides that "[a] member [of ERSRI] who withdraws from service * * * shall be paid on demand a refund consisting of the accumulated contributions standing to his or her credit in his or her individual account in the annuity savings account, without interest."

Because the order to be entered against him in federal court would be an order of forfeiture, not an order of restitution, Zambarano asserted that the board had no basis for refusing to return his contributions.

In an answer filed on May 31, 2011—after the order of forfeiture had entered against Zambarano—the board denied the substantive allegations of the complaint, raised several affirmative defenses, and asserted counterclaims against Zambarano. On June 22, 2011, Zambarano moved to amend his complaint. Among other things, he sought to add an "innocent spouse" claim by his wife, Kathy A. Zambarano, who was also named as a plaintiff.[4] The board assented to the filing of Zambarano's amended complaint and filed its amended answer on June 29, 2011.

A bench trial was held before a justice of the Superior Court on September 15, 2011. The parties submitted a stipulated set of facts before the trial began. Two witnesses testified: Kathy Zambarano and Frank Karpinski, the executive director of ERSRI. Because the board has not appealed that portion of the judgment relating to Kathy Zambarano's "innocent spouse" claim, we will not summarize her testimony.

Karpinski's testimony confirmed certain facts regarding Zambarano's length of municipal and state service and his eligibility for pensions from MERS and ERSRI. Karpinski testified that Zambarano would be entitled to a municipal pension benefit once he reached the age of fifty-eight. This pension benefit would be about $175.55 per month, or about $154.45 per

---

[4] General Laws 1956 § 36-10.1-3(d) provides as follows:

> "If the [S]uperior [C]ourt determines that the retirement or other benefits or payments of a public official or public employee should be revoked or reduced under this chapter, it may, in its discretion and after taking into consideration the financial needs and resources of any innocent spouse * * * order that some or all of the revoked or reduced benefits or payments be paid to [that] innocent spouse * * * as justice may require."

month if Zambarano's period of dishonorable service was excluded from the calculation. Karpinski stated that Zambarano's municipal pension benefit could not be paid to another individual before Zambarano attained the age of fifty-eight. Karpinski also testified that Zambarano was not entitled to a pension benefit for his service as a state employee because he had been a state employee for less than ten years when he resigned from his position at the DOC.

On December 13, 2011, after the parties presented arguments, the trial justice rendered a bench decision.[5] Pursuant to § 36-10.1-3, the trial justice revoked Zambarano's MERS pension in its entirety, citing "the seriousness of the offense[s]" and Zambarano's "grievous breach of public trust." The trial justice also ordered the board to return to Zambarano the contributions he had made to ERSRI when he worked for the DOC. Interpreting § 36-10.1-4(c), he found that the phrase "judgments or orders" was modified by the phrase "for the payment of restitution." A contrary reading, he explained, "would lead to an absurd result." Based on the plain language of the statute, the trial justice inferred that the law was intended to reach "situation[s] where someone was injured, either economically or physically[,] by reason of conduct that occurred in the course of public employment." He noted that "[i]f the General Assembly wanted [the statute] to apply * * * to any money owed for any purpose to anyone else, then they could have said that."

The trial justice also found that Kathy Zambarano was "truly an innocent spouse within the meaning of [§ 36-10.1-3(d)]." Accordingly, he awarded Kathy the MERS pension to which her husband would have been entitled, excluding the period of Zambarano's dishonorable service. Finally, the trial justice ordered the board to return to Zambarano the contributions he

---

[5] Although the record indicates that the parties submitted post-trial memoranda, the record does not include copies of those documents.

- 5 -

had made to MERS during the period of his dishonorable service; these contributions totaled $720.

Judgment entered on January 3, 2012. The board timely appealed the Superior Court's decision. It also moved, under Rule 62 of the Superior Court Rules of Civil Procedure, for a stay of the judgment pending appeal. The Superior Court granted that motion in an order entered on January 31, 2012.

## II

### Issue on Appeal

The parties' dispute centers on the application of § 36-10.1-4(c) to the facts of this case. Zambarano acknowledges that he is obliged to forfeit $46,000 to the federal government, but argues that he is nonetheless entitled to a return of his contributions to ERSRI and MERS. He maintains that, because no "judgments or orders * * * for the payment of restitution" have been entered against him, § 36-10.1-4(c) provides no basis upon which the board may refuse his request for a return of his contributions.

The board offers a different reading of § 36-10.1-4(c). It contends that the phrase "for the payment of restitution" modifies the word "orders" but does not modify the word "judgments." Under this interpretation, the board argues that it may withhold Zambarano's contributions until the federal court's order of forfeiture has been satisfied in full.

## III

### Standard of Review

This appeal presents us with a singular issue of statutory interpretation. We review such questions <u>de novo</u>, "with the 'ultimate goal' of giving effect to that purpose which our Legislature intended in crafting the statutory language." <u>McCain v. Town of North Providence,</u>

41 A.3d 239, 243 (R.I. 2012) (quoting Webster v. Perrotta, 774 A.2d 68, 75 (R.I. 2001)). It is well settled that "the plain statutory language" is "the best indicator" of the General Assembly's intent. Id. (quoting DeMarco v. Travelers Insurance Co., 26 A.3d 585, 616 (R.I. 2011)). This Court will not construe a statute "to achieve [a] meaningless or absurd result[ ]." Id. (quoting Ryan v. City of Providence, 11 A.3d 68, 71 (R.I. 2011)). Rather, when interpreting statutes, a court should construe "each part or section * * * in connection with every other part or section to produce a harmonious whole." 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 46:5 at 189-90 (7th ed. 2007).

## IV

## Discussion

The Legislature enacted the Rhode Island Public Employee Pension Revocation and Reduction Act (PEPRRA), chapter 10.1 of title 36, in 1992. P.L. 1992, ch. 306, art. 1, § 8. "PEPRRA was adopted because of the unfortunate misconduct of public officials." Retirement Board of the Employees' Retirement System of Rhode Island v. DiPrete, 845 A.2d 270, 279 (R.I. 2004). The statute authorizes the Superior Court to revoke or reduce the retirement benefits of public officials or employees who are convicted of crimes relating to their public office or employment. Section 36-10.1-3(a). Under this statute, "[a]ny public official or public employee whose retirement or other benefits or payments are revoked * * * shall be entitled to a return of his or her contribution paid into the relevant pension fund(s), without interest." Section 36-10.1-4(a).

At the outset, we note that § 36-10.1-4 may not apply to Zambarano's contributions to ERSRI. Because Zambarano had not yet accumulated sufficient years in state service to be eligible for a state pension, the trial justice did not revoke (and could not have revoked) a

pension based on this employment. Thus, this provision of PEPRRA may not apply to the $30,554.20 in contributions that Zambarano made to ERSRI. It is unclear to us whether the General Assembly intended § 36-10.1-4 to apply in all situations where the Superior Court has revoked a pension of an ex-employee, whether or not that individual has made contributions toward another pension that may not yet have vested. However, because the parties do not contest that § 36-10.1-4 applies to Zambarano's contributions to both MERS and ERSRI, we assume (without deciding) that it does, and proceed to consider whether the trial justice erred in interpreting the statute as applied to the facts of this case.[6]

As noted above, § 36-10.1-4(c) provides that "no payments in return of contributions shall be made or ordered unless and until * * * the public official or public employee * * * has satisfied in full" certain "judgments or orders." The disjunctive phrase "judgments or orders" is followed by four modifying phrases: (1) "rendered by any court of competent jurisdiction;" (2) "for the payment of restitution;" (3) "for losses incurred by any person;" and (4) "as a result of the subject crime related to public office or public employment." Id. After reading § 36-10.1-4(c) in its entirety, alongside PEPRRA's other provisions, we conclude that all four of these phrases modify the phrase "judgments or orders."

We have previously observed that "[b]ecause the language of the statute is clear, PEPRRA must be applied literally." Smith v. Retirement Board of the Employees' Retirement System of Rhode Island, 656 A.2d 186, 190 (R.I. 1995). If the phrase "for the payment of restitution" is read to modify only the word "orders" and not the word "judgments," then the

---

[6] Even if we were to decide that § 36-10.1-4 does not apply to Zambarano's contributions to ERSRI, we would affirm the trial justice's decision on alternate grounds. Section 36-10-8 states, in pertinent part, that "[a] member [of ERSRI] who withdraws from service or ceases to be a member for any reason other than death or retirement shall be paid on demand a refund [of his or her retirement contributions]." Under this statute, Zambarano was entitled to a return of his contributions to ERSRI.

three other modifying phrases quoted above must also be read in like manner.  The word "judgments" would thus be unmodified, but the word "orders" would be modified by four phrases.  The General Assembly could not have intended such a result.  The board concedes that the phrase "as a result of the subject crime related to public office or public employment" modifies both "judgments" and "orders," but argues that "for the payment of restitution" modifies only the word "orders."  Because this reading results in an illogical interpretation of the statute, we must reject it.[7]

The board argues that Zambarano's reading of § 36-10.1-4(c) "would render the word 'judgment[s]' mere redundant surplusage * * *."  We disagree.  To us, the disjunctive phrase "judgments or orders" shows that the Legislature intended the provision to apply in the event that an order of restitution was not later entered as a judgment of restitution.  The word "judgments" is not surplusage; rather, it is an alternative means by which restitution can be required.

To bolster its argument, the board also directs our attention to § 36-10.1-3(a), which states that "any retirement or other benefit or payment of any kind * * * shall be revoked or reduced" under certain circumstances.  It contends that the phrase "of any kind" supports its reading of § 36-10.1-4(c).  Because §§ 36-10.1-3 and 36-10.1-4(c) deal with two different subjects, this argument is unavailing.  Section 36-10.1-3 authorizes the revocation or reduction of the pension or other benefits of a public official or employee.  Its broad scope is evidence of the

---

[7] In its papers to the Superior Court and to this Court, the board has repeatedly omitted the phrase "for the payment of restitution" when paraphrasing the language of § 36-10.1-4(c).  This underscores our conclusion that the statute cannot be read as written according to the board's interpretation.  Contrary to its argument, the Superior Court is not "fully empowered to determine whether or not Mr. Zambarano has satisfied in full any judgments or orders related to his criminal conduct * * *."  (Emphasis added.)  As we have explained above, § 36-10.1-4(c) sets forth specific limitations on the kinds of judgments or orders that must be satisfied before payments in return of contributions are made or ordered.

Legislature's intent that those who betray the public trust receive no benefits whatsoever from the public fisc upon their separation from state or municipal employment. Section 36-10.1-4 applies not to pension benefits, but to the contributions made by the ex-employee. Under the plain language of § 36-10.1-4(c), the Superior Court may only consider whether certain specified kinds of judgments or orders for the payment of restitution have been satisfied before ordering the return of contributions to an ex-employee.

We decline to treat the order of forfeiture to which Zambarano is subject as an order of restitution. In so doing, we must briefly define and distinguish the concepts of restitution and forfeiture. "The word restitution means restoration. Restitution is a return or restoration of what the defendant has gained in a transaction." 1 Dan B. Dobbs, Law of Remedies § 4.1(1) at 551 (2d ed. 1993). "Liability in restitution derives from the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant." Restatement (Third) Restitution and Unjust Enrichment § 1 cmt. a. at 3 (2011). Once liability is established, "the defendant must restore the benefit in question or its traceable product, or else pay money in the amount necessary to eliminate unjust enrichment." Id.

Forfeiture is defined as "[t]he divestiture of property without compensation" or "[t]he loss of * * * property because of a crime, breach of obligation, or neglect of duty." Black's Law Dictionary 722 (9th ed. 2009). The federal government is authorized "to seek forfeiture of the proceeds of virtually all serious federal crimes * * *." Jimmy Gurulé et al., The Law of Asset Forfeiture § 5-3(b). at 193 n.59 (2d ed. 2004). A forfeiture that is sought against a defendant in a criminal prosecution is punitive in nature, not remedial. See United States v. Bajakajian, 524 U.S. 321, 332 (1998).

A key distinction between restitution and forfeiture is the recipient of payments made to satisfy those orders. Payments made to satisfy orders of restitution are made to the individual at whose expense the defendant was unjustly enriched. By contrast, payments made to satisfy orders of forfeiture are made to the sovereign that sought the forfeiture—either the state or federal government. Here, the federal court did not order Zambarano to restore the $46,000 that he and his codefendants had accepted as bribe money to the individuals who had themselves broken the law by bribing public officials; instead, it ordered Zambarano to forfeit his ill-gotten gains to the federal government as part of the punishment it imposed for his crimes.

As Zambarano observed in his brief to this Court, "[s]imply stated, forfeiture is not restitution." We cannot ignore the plain language of § 36-10.1-4(c); similarly, we cannot transmute the order of forfeiture into an order or judgment of restitution. Having concluded that the trial justice correctly found that "for the payment of restitution" modifies both "judgments" and "orders," we hold that, because the federal court issued neither a judgment nor an order of restitution against Zambarano, § 36-10.1-4(c) provides the board no basis upon which it can refuse his demand for a return of his contributions.[8]

# V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the record in this case.

---

[8] Although the outcome of this appeal may appear unseemly to some observers, the fact that Zambarano is entitled to a return of his contributions does not change the reality that he remains liable on the federal court's $46,000 forfeiture judgment against him.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**


*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** John A. Zambarano et al. v. The Retirement Board of the Employees' Retirement System of the State of Rhode Island.

**CASE NO:** No. 2012-155-Appeal.
(PC 11-2304)

**COURT:** Supreme Court

**DATE OPINION FILED:** March 1, 2013

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:** Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Neil P. Philbin, Esq.

For Defendant:  Michael P. Robinson, Esq.