February 3, 2026

**Supreme Court**

**(**Dissent begins on Page 12)

Newport School Committee : No. 2021-37-M.P.
(PC 19-4024)

v. :

Rhode Island Department of :
Education et al.


Cumberland School Committee : No. 2021-38-M.P.
(PC 20-31)

v. :

Rhode Island Council on Elementary :
and Secondary Education et al.


NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Newport School Committee    :    No. 2021-37-M.P.
(PC 19-4024)

v.    :

Rhode Island Department of    :
Education et al.


Cumberland School Committee    :    No. 2021-38-M.P.
(PC 20-31)

v.    :

Rhode Island Council on Elementary    :
and Secondary Education et al.

Present: Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.** These consolidated cases came before the Supreme Court pursuant to a writ of certiorari issued upon petitions by the defendant, the Department of Children, Youth, and Families (DCYF), seeking review of a Superior Court judgment in favor of the plaintiffs, Newport School Committee (Newport) and Cumberland School Committee (Cumberland) (collectively, plaintiffs). The matter was previously before this Court on the full argument calendar, resulting in an opinion resolving the first of two issues that were presented. *See Newport School Committee v. Rhode Island Department of Education*, 316 A.3d 1159, 1164 (R.I. 2024). These cases arise out of the plaintiffs'

decision not to reimburse DCYF at the "per-pupil special-education" rate for the cost of educating children who were placed in residential treatment programs by DCYF, but who were not receiving special education services.

In our opinion dated June 28, 2024, we identified that there were two issues presented by DCYF's petition: (1) "whether the trial justice erred in finding that the statute did not require the municipalities to pay the per-pupil special-education rate regardless of whether the children received special-education services" and (2) "whether the trial justice erred in finding that the statute obligated the municipalities to pay the per-pupil *general*-education rate even though the reference to general education was removed from the statute." *Newport School Committee*, 316 A.3d at 1164. In resolving the first issue, we held that "[p]ursuant to the clear and unambiguous language of [G.L. 1956] §§ 16-64-1.1 and 16-64-1.2, municipalities are not required to reimburse DCYF at the per-pupil special-education rate when there were no special education services rendered and thus, no special education costs incurred." *Id.* We then "direct[ed] the parties to file supplemental briefs" on the remaining issue now before us: "[W]hether the trial justice erred in finding that the statute obligated the municipalities to pay the per-pupil *general*-education rate even though the reference to general education was removed from the statute." *Id.*

For the reasons set forth herein, we quash the decision of the Superior Court.

## Facts and Travel

Although the facts of this case were laid out in this Court's first opinion in this matter, we reiterate those necessary for context of the remaining issue. In 2018, the Family Court placed two children, A. Doe and M. Doe, in the temporary custody of DCYF.[1] The Family Court designated Newport and Cumberland, respectively, as the residences of the children's custodial parents for the purpose of determining the municipalities' financial responsibility for the children's education. DCYF subsequently placed A. Doe at Harmony Hill School and M. Doe at Meadowridge Academy. Neither student received special education services in their respective placements.

These consolidated cases began when DCYF filed two "Request[s] for an Order for Residency Determination and Designation of Party Responsible for the Education of a Youth Residing in a Residential Facility" with the Commissioner of Elementary and Secondary Education (the commissioner), arguing that the municipalities were required to pay the per-pupil special-education rate pursuant to the unambiguous language of §§ 16-64-1.1 and 16-64-1.2. The commissioner agreed with DCYF in each case, issuing two decisions that ordered Newport and Cumberland to reimburse DCYF for the cost of educational services provided to the

---

[1] A. Doe and M. Doe were minors during the Family Court proceedings. We use pseudonyms to respect their privacy.

children at the special-education rate. After the Council on Elementary and Secondary Education denied Newport's and Cumberland's independent appeals of the commissioner's decisions, the municipalities appealed to the Superior Court pursuant to the Administrative Procedures Act, G.L. 1956 chapter 35 of title 42.

A justice of the Superior Court consolidated the two cases and issued a written decision, determining that the clear and unambiguous language of § 16-64-1.1(c) required the designated city or town to pay "its share of the cost of educational services to DCYF" rather than the higher, per-pupil special-education rate. (Emphasis omitted) (quoting § 16-64-1.1(c)). The trial justice determined that § 16-64-1.1(c) was devoid of language that obligated the municipalities to pay "more than its share at a rate inconsistent with the educational services provided to the child." She further rejected Cumberland's argument that the statute did not require it to pay any of the cost of education, reasoning that "there is no support in either statute for [that] position * * *."

The trial justice determined that, even if the statute were ambiguous, the outcome would not differ because requiring the municipalities to pay almost two and a half times the cost of the children's education would be absurd. She therefore granted the appeals, concluding that Newport and Cumberland were responsible for the per-pupil *general*-education costs and ordered each municipality to reimburse DCYF in the amounts due. Judgment was entered in favor of Newport and

Cumberland, and DCYF filed, and we granted, a petition for writ of certiorari in each case.

This Court issued an opinion resolving the first of two issues. *See Newport School Committee*, 316 A.3d at 1164. Quoting the relevant statutory language, this Court stated:

> "Section 16-64-1.1(c) provides that the 'city or town determined to be responsible to DCYF for a per-pupil special-education *cost* pursuant to § 16-64-1.2 shall pay its share of the cost of educational services to DCYF * * *.' Section 16-64-1.1(c) (emphasis added). Section 16-64-1.2 provides that, in circumstances where the parents' residency is not determined by the Family Court, the department of elementary and secondary education 'shall designate the city or town to be responsible for the per-pupil special education *cost* of education to be paid to DCYF * * *.' (Emphasis added.)" *Id.* at 1163-64.

We then concluded that "[t]he term 'cost' refers to 'the amount or equivalent paid or given or charged * * * for anything bought or taken in barter or for service rendered.'" *Id.* at 1164 (quoting Webster's Third New International Dictionary 515 (1971)).

Accordingly, we determined that "when the statute authorizes the department of elementary and secondary education to designate a municipality to be responsible for the 'per-pupil special education cost,' it is not authorizing DCYF to charge the per-pupil special-education *rate* regardless of whether there were special-education costs actually incurred." *Newport School Committee*, 316 A.3d at 1164. Therefore,

as noted *supra*, "[p]ursuant to the clear and unambiguous language of §§ 16-64-1.1 and 16-64-1.2, municipalities are not required to reimburse DCYF at the per-pupil special-education rate when there were no special education services rendered and thus, no special education costs incurred." *Id.* The Court then directed the parties to provide supplemental briefing on the second issue, "whether the trial justice erred in finding that the statute obligated the municipalities to pay the per-pupil *general*-education rate even though the reference to general education was removed from the statute," *id.*, which is now before us. We answer in the affirmative.

**Standard of Review**

"This Court is the 'final arbiter on questions of statutory construction.'" *Newport School Committee*, 316 A.3d at 1163 (deletion omitted) (quoting *Ryan v. City of Providence*, 11 A.3d 68, 70 (R.I. 2011)). "Therefore, 'although this Court affords the factual findings of an administrative agency great deference, questions of law—including statutory interpretation—are reviewed *de novo*.'" *Id.* (brackets omitted) (quoting *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I. 2008)).

**Discussion**

We previously indicated our inclination "to determine that the General Assembly intended to remove the obligation to reimburse DCYF in such circumstances" when "the notion of a contribution based upon the average per-pupil

cost for general education" was removed from the statute in 2001. *Newport School Committee*, 316 A.3d at 1164. After supplemental briefing and oral argument, we conclude that § 16-64-1.1 does not obligate municipalities to reimburse DCYF for the cost of general education for students placed in residential treatment programs by DCYF, but who were not receiving special education services.

"[I]t is well settled that the plain statutory language is the best indicator of the General Assembly's intent." *Twenty Eleven, LLC v. Botelho*, 127 A.3d 897, 900 (R.I. 2015) (quoting *Zambarano v. Retirement Board of the Employees' Retirement System of Rhode Island*, 61 A.3d 432, 436 (R.I. 2013)). "If a statute is clear and unambiguous, we must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Newport School Committee*, 316 A.3d at 1163 (quoting *Athena Providence Place v. Pare*, 262 A.3d 679, 681 (R.I. 2021)). "[W]hen a statute expresses a clear and unambiguous meaning, the task of interpretation is at an end and this Court will apply the plain and ordinary meaning of the words set forth in the statute." *Retirement Board of Employees' Retirement System of State v. DiPrete*, 845 A.2d 270, 297 (R.I. 2004) (brackets omitted) (quoting *State v. Bryant*, 670 A.2d 776, 779 (R.I. 1996)).

DCYF argues that designated municipalities are required to pay their "share" of education costs, which differs depending on whether the facility renders special or general education services to children in its care. According to DCYF, the 2001

amendment to § 16-64-1.1 does not evidence an intent to eliminate municipalities'
obligation to pay the general-education costs of students in DCYF care, but rather
requires municipalities to pay a share of general-education costs. In support of this
argument, DCYF points to § 16-64-1.1(d) which, in its view, identifies the only time
DCYF bears the entire cost of a student's education, and contends that municipalities
are still responsible for education costs of any student whose placement falls outside
of § 16-64-1.1(d), whether they receive general or special educational services.[2]

Newport and Cumberland contend that without a clear designation that the
municipalities must pay the general-education rate for students in placements with
onsite educational services, they cannot be deemed responsible for those costs. In
support of their argument, Newport and Cumberland assert that, because the statute
only references special-education costs, they are not required to pay for

---

[2] General Laws 1956 § 16-64-1.1(d) reads:

> "Children placed by DCYF in group homes, child-caring
> facilities, community residences, or other residential
> facilities shall have the entire cost of their education paid
> for by DCYF if:
> "(1) The facility is operated by the state of Rhode Island
> or the facility has a contract with DCYF to fund a pre-
> determined number of placements or part of the facility's
> program;
> "(2) The facility is state licensed; and
> "(3) The facility operates an approved, on-grounds
> educational program, whether or not the child attends the
> on-grounds program."

general-education costs, and are only required to reimburse DCYF for students receiving special education services in residential placements providing onsite educational services.[3]

We begin by looking at the plain language of the statute. Section 16-64-1.1(c) reads:

> "Children placed by DCYF in a residential-treatment program, group home, or other residential facility, whether or not located in the state of Rhode Island, which includes the delivery of educational services provided by that facility (excluding facilities where students are taught on grounds for periods of time by teaching staff provided by the school district in which the facility is located), shall have the cost of their education paid for as provided for in subsection (d) and § 16-64-1.2. *The city or town determined to be responsible to DCYF for a per-pupil special-education cost pursuant to § 16-64-1.2 shall pay its share of the cost of educational services* to DCYF or to the facility providing educational services." (Emphasis added.)

In relevant part, § 16-64-1.2(b) reads:

> "If no factual determination and designation of the residence of the parent(s) of a child placed in the care and custody of the state is made by the family court pursuant to § 16-64-1.2(a), then the department of elementary and secondary education shall designate the *city or town to be responsible for the per-pupil special education cost of education* to be paid to DCYF or to the facility providing educational services for children in state care pursuant to § 16-64-1.1(c)." (Emphasis added.)

---

[3] Newport and Cumberland requested affirmative relief in the form of reimbursement for costs paid for the children at issue. Because neither municipality filed a petition for writ of certiorari, we decline to address their request for relief.

Here, the General Assembly used the words "per-pupil special-education cost" in both §§ 16-64-1.1 and 16-64-1.2 to refer to the share due to DCYF from the designated towns. Section 16-64-1.1(c) does not address what reimbursement, if any, DCYF should receive from designated towns when children in DCYF care are placed in residential treatment centers that provide general educational services but do not fall within subsection (d). However, "we are mindful of the oft-quoted maxim '*expressio unius est exclusio alterius*' ('the expression of one thing is the exclusion of another')." *Ryan*, 11 A.3d at 75 (quoting Black's Law Dictionary 1830 (9th ed. 2009)). In both sections, the General Assembly refers only to "the per-pupil special-education cost" with no reference whatsoever to general-education costs. Our *de novo* review reveals that there is nothing in §§ 16-64-1.1 or 16-64-1.2 that obligates a municipality to pay the cost of general education for children in DCYF care placed in residential treatment programs providing general educational services.

When the General Assembly amended the statutory scheme in 2001, it removed the reference to general-education costs, indicating the General Assembly's intent to eliminate reimbursement of those costs. "We presume that the drafters 'intended each word or provision of a statute to express a significant meaning, and the Court will give effect to every word, clause, or sentence, whenever possible.'" *Prew v. Employee Retirement System of City of Providence*, 139 A.3d 556, 561 (R.I.

2019) (brackets omitted) (quoting *State v. Clark*, 974 A.2d 558, 571 (R.I. 2009)).

Prior to the amendment, § 16-64-1.1 read:

> "All other children placed by DCYF in group homes, child caring facilities, community residences, or other residential facilities, whether or not located in the state of Rhode Island, shall have the cost of their education paid for by DCYF or, if the child is enrolled in a public school in Rhode Island, by the city or town in which the residential facility is located, and the city, town or DCYF, *shall receive a contribution from the city or town in which the child's parent(s) or guardian live as determined by section 16-64-1.2. Such contribution shall be at least the amount of the average per pupil cost for general or special education of the city or town making the contribution.*"
> Public Laws 2001, ch. 77, art. 22, § 3 (emphasis added).

Previously, the statute referenced reimbursement for "at least" the average per-pupil general or special education costs. *See id.* The amendment removed any reference to general-education costs. *Id.* Accordingly, "[u]nless there are compelling reasons for us to do so, we should not by implication read into the statute what the [L]egislature has not expressed." *Commerce Park Associates 1, LLC v. Houle*, 87 A.3d 1061, 1067 (R.I. 2014) (brackets omitted) (quoting *Woods v. Safeway System, Inc.*, 102 R.I. 493, 495, 232 A.2d 121, 122 (1967)).

The statute, as amended, is devoid of any mention or any reference to general-education costs. Thus, if the General Assembly intended the designated municipalities to pay their share of general-education costs for children in residential facilities receiving general education services, the General Assembly would have

drafted the statute to say so. However, it is not our role to read words into a statute where they do not exist, particularly words that were removed from the prior version. The plain and unambiguous language of the statute does not include reimbursement for general-education costs. Therefore, the trial justice erred in finding that the statute obligated municipalities to pay the per-pupil general-education rate even though the reference to general education was removed from the statute.

## Conclusion

For the reasons stated herein, we quash the decision of the trial justice. The record may be returned to the Superior Court with our decision endorsed therein.

Justice Long did not participate.

**Chief Justice Suttell, dissenting.** Because I disagree with the majority's conclusion that "[t]he plain and unambiguous language of the statute does not include reimbursement for general-education costs[,]" I respectfully dissent.[1]

The statutory section at issue, G.L. 1956 § 16-64-1.1(c) provides:

> "Children placed by DCYF in a residential-treatment program, group home, or other residential facility, whether or not located in the state of Rhode Island, which includes the delivery of educational services provided by that facility (excluding facilities where students are taught on

---

[1] I do, however, agree with the majority's decision to decline to address plaintiffs' requested relief because they did not file a petition for writ of certiorari in this matter.

grounds for periods of time by teaching staff provided by the school district in which the facility is located), shall have the cost of their education paid for as provided for in subsection (d) of this section and § 16-64-1.2. *The city or town determined to be responsible to DCYF for a per-pupil special-education cost pursuant to § 16-64-1.2 shall pay its share of the cost of educational services to DCYF or to the facility providing educational services*." (Emphasis added.)

The last sentence is the operative language at the core of this dispute. Therefore, additionally relevant is § 16-64-1.2, entitled "[d]esignation of residency of children in state care for purposes of financial responsibility under § 16-64-1.1(c)," which, this Court has previously stated "proceeds to outline the methods of designating the parents' residence for the purpose of determining a municipality's financial responsibility pursuant to § 16-64-1.1." *Newport School Committee v. Rhode Island Department of Education*, 316 A.3d 1159, 1162 (R.I. 2024). In that opinion, this Court directed the parties to file supplemental briefing on the question of "whether the trial justice erred in finding that the statute obligated the municipalities to pay the per-pupil *general*-education rate even though the reference to general education was removed from the statute." *Id.* at 1164.

Before this Court on supplemental briefing, DCYF argues that "the school districts are required to make a payment to DCYF or directly to the residential treatment facility, not at a per-pupil general education *rate* or special education *rate*, but, rather, their 'share' of the residential treatment facility's 'cost of educational

- 13 -

services.'" Relying on this Court's earlier opinion in the matter, DCYF further submits that plaintiffs "misapply § 1.2 and misconstrue [§] 1.1(c)." In response, plaintiffs contend that § 16-64-1.1(c) obligates municipalities to reimburse DCYF for special-education costs only, meaning that they have no obligation under the statute to reimburse for general education.

"If a statute is clear and unambiguous, we must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Newport School Committee*, 316 A.3d at 1163 (quoting *Athena Providence Place v. Pare*, 262 A.3d 679, 681 (R.I. 2021)). In so doing, I am of the opinion that plaintiffs are required to pay their "share of the cost of educational services to DCYF or to the facility providing educational services." Section 16-64-1.1(c).

Indeed, I read the operative sentence of § 16-64-1.1(c) as consisting of two parts: (1) "[t]he city or town determined to be responsible to DCYF for a per-pupil special-education cost pursuant to § 16-64-1.2" and (2) "shall pay its share of the cost of educational services to DCYF or to the facility providing educational services." By its plain meaning, "[t]he city or town determined to be responsible to DCYF for a per-pupil special-education cost pursuant to § 16-64-1.2" identifies who, meaning which municipality's school district, must pay. Section 16-64-1.1(c); *see Newport School Committee*, 316 A.3d at 1162 ("Section 16-64-1.2 * * * outline[s] the methods of designating the parents' residence for the purpose of determining a

municipality's financial responsibility pursuant to § 16-64-1.1."). I agree with the trial justice that "[t]he reference to 'per-pupil special education cost' clearly relates to the provision in § 16-64-1.2 that identifies how a city or town is to be designated as the financially responsible municipality. It does not determine how the designee's financial obligation is to be calculated."

Turning to the predicate language, "shall pay its share of the cost of educational services to DCYF or to the facility providing educational services" identifies what must be paid: the cost of educational services. Section 16-64-1.1(c). This Court determined that "[t]he term 'cost' [is] 'the amount or equivalent paid or given or charged for anything bought or taken in barter or for service rendered[,]'" *Newport School Committee*, 316 A.3d at 1164 (deletion omitted) (quoting Webster's Third New International Dictionary 515 (1971)), which I take to mean the *actual amount* paid for educational services, rather than a special-education or general-education *rate*. Furthermore, I agree with DCYF that there is nothing in § 16-64-1.1(c) that would limit plaintiffs' "'share of the cost of educational services' only to educational services provided to special education children."

Not only did the trial justice make this determination but, in its initial brief on the matter to this Court, Cumberland *argued the position that DCYF is now arguing*, specifically that "[t]he text of G.L. 1956 § 16-64-1.1 requires a municipality to pay 'its share of the cost of educational services'; it does not define 'share' to mean a

- 15 -

'per-pupil special education cost' without regard to the services the student actually receives." Cumberland went on to state:

> "Grammatically, the sentence has two parts – the who (the subject) and the what (the verb/predicate):
>
> > "• *Who must pay:* 'The city or town determined to be responsible to D[CY]F for a per-pupil special-education cost pursuant to § 16-64-1.2 * * *'
> > "• *What it must pay:* '* * * shall pay its share of the cost of educational services to DCYF or to the facility providing educational services.'
>
> "Like in the other subsections, 'the cost of educational services' is not a special education cost devoid of any connection to the child or services provided. It is the cost to that city or town to educate the child and not more. * * *
>
> "The only reference to 'special education' in § 16-64-1.1 is 'pursuant to' the responsibility determination in § 16-64-1.2. Section 16-64-1.2 does not establish or define the amount of payment; it only provides the procedure to determine which city or town may be required to make a payment under § 16-64-1.1(c)."

Newport also took a stance opposite to what it now argues. In its initial brief, Newport submitted that the statutory obligation under § 16-64-1.1 "requires Newport to pay '*its share of the cost of educational services to DCYF*'. * * * The only result that makes sense in this case is affirming the decision of the Superior Court, because it follows the plain and ordinary meaning of the statutory language."

It is also noteworthy that A. Doe and M. Doe do not fall into any other subcategory of § 16-64-1.1, including the only subsection under which DCYF is

obligated to pay the full cost. Section 16-64-1.1(d) is the *only* subsection under which DCYF is fully responsible for the cost of a child's education. By interpreting § 16-64-1.1(c) to exclude children receiving *general education* who are placed by DCYF in a residential treatment program, whether or not located in the State of Rhode Island, which includes the delivery of educational services provided by that facility leaves a hole in the statute, meaning that there is no guidance on who would pay in this particular situation.

Accordingly, I am of the opinion that the trial justice did not err in finding that the statute obligated the municipalities to pay the per-pupil general-education *cost* of A. Doe's education while in residence at Harmony Hill School and M. Doe's education while in residence at Meadowridge Academy, and I would affirm her decision on the matter. For those reasons, I respectfully dissent.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Newport School Committee v. Rhode Island Department of Education et al.<br><br>Cumberland School Committee v. Rhode Island Council on Elementary and Secondary Education et al. |
| **Case Number** | No. 2021-37-M.P. (PC 19-4024)<br>No. 2021-38-M.P. (PC 20-31) |
| **Date Opinion Filed** | February 3, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Netti C. Vogel |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>William J. Conley, Jr., Esq.<br>Stephen Adams, Esq. |
| | For Defendants:<br><br>Lauren E. Jones, Esq. |