December 15, 2017

**Supreme Court**

No. 2015-246-Appeal.
No. 2015-244-Appeal.
No. 2015-243-Appeal.
(PB 08-6508)

Retirement Board of the Employees'      :
Retirement System of the City of
Providence

                                               :

        v.

Frank E. Corrente      :
and
Mayor of the City of Providence et al.      :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2015-246-Appeal.
No. 2015-244-Appeal.
No. 2015-243-Appeal.
(PB 08-6508)

Retirement Board of the Employees'     :
Retirement System of the City of
Providence

                                        :

        v.                              :

Frank E. Corrente                        :
            and
Mayor of the City of Providence et al.   :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  These consolidated appeals arise from a decision

of the Retirement Board of the Employees' Retirement System of the City of Providence (the

board or city board) to reduce the pension benefits of Frank E. Corrente (Corrente) following

multiple federal convictions.[1]  Specifically, pursuant to the Honorable Service Ordinance (HSO),

Chapter 17, Article VI, Sec. 17-189.1 of the City of Providence Code of Ordinances (as enacted

in 1999),[2] the board revoked a portion of Corrente's pension benefits and ordered him to return a

portion of the benefits that he had received.

        The matters now before this Court are: (1) Corrente's appeal from a Superior Court

judgment denying his request for a tax credit on pension benefits that he had received but was

required to return to the board; (2) the appeal of the Mayor of the City of Providence (the mayor)

---

[1] On October 31, 2016, this Court consolidated the three appeals: No. 2015-243-A., No. 2015-244-A., and No. 2015-246-A.

[2] "The HSO was enacted in 1999 and amended in 2011." *Retirement Board of Employees' Retirement System of Providence v. Corrente*, 111 A.3d 301, 302 n.1 (R.I. 2015) (*Corrente I*). For purposes of this opinion, all references to the HSO are to the pre-2011 version.

and the City of Providence (the city) who, as intervenors, had challenged the board's decision to reduce, rather than revoke, Corrente's pension benefits; and (3) the board's cross-appeal from the judgment allowing the mayor and the city to intervene as a matter of right under Rule 24(a) of the Superior Court Rules of Civil Procedure. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

## A

## Procedural Background

The facts underlying this case are set forth in detail in *Retirement Board of the Employees' Retirement System of Providence v. Corrente*, 111 A.3d 301, 303-05 (R.I. 2015) (*Corrente I*), where this Court vacated the Superior Court's judgment for lack of subject-matter jurisdiction and remanded it to the Superior Court for further proceedings. Below, we outline the facts pertinent to the present appeal.

Corrente had two terms of city employment. His first term of employment commenced on June 26, 1967, when Corrente began working in the controller's office, and continued until he retired from his position as the city controller on April 12, 1987. Corrente received pension benefits for his first term of employment until he returned to work for the city on December 31, 1990, for his second term of employment, as the director of administration under then-Mayor Vincent A. Cianci, Jr. Corrente retired from this position on July 4, 1999, and received an increased monthly pension based on a higher gross salary for his second term of employment.

On June 24, 2002, Corrente was convicted of six felony counts in the United States District Court for the District of Rhode Island. On October 23, 2002, the board suspended

Corrente's pension benefits, pending a hearing, pursuant to the HSO, which provided in pertinent part:

> "Whenever any employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment, the retirement board shall conduct a meeting, with the employee having the opportunity to be heard, to determine if a recommendation of revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under this chapter is warranted." Chapter 17, Article VI, Sec. 17-189.1(a)(5).

On April 23, 2003, the board appointed Larry Ritchie, a professor at Roger Williams University School of Law, as an "independent hearing officer." On December 27, 2007, after Corrente's release from prison, a hearing was held; and on March 12, 2008, Prof. Ritchie issued a report and recommendation to the board. He determined that all of the crimes that Corrente committed occurred during his second term of employment with the city as the director of administration; and accordingly, he recommended that the board: (1) revoke the retirement benefits that derived from Corrente's second term of employment; (2) pay him a reduced pension based on his first term of employment; (3) return the contributions that Corrente paid into the retirement system during his second term of employment; and (4) offset any retirement benefits and interest due that were suspended in October 2002 with the retirement benefits paid to Corrente following his retirement from his second term of employment.

On July 30, 2008, the board met, and both Corrente and Prof. Ritchie were present. Professor Ritchie discussed the issue of taxes, stating, "[T]he one thing that * * * didn't come up at the hearing and I did not include at all in the recommendation had to do with taxation. * * * I would agree * * * that ought to be included in with the calculations." Following Prof. Ritchie's comments, a member of the board asked him if the board should add an additional item to his recommendation, about the tax issue, to which Prof. Ritchie responded affirmatively. Another

member of the board clarified Prof. Ritchie's recommendation regarding the tax credit. He explained that Corrente would pay back to the city the amount of pension benefits from his second term of employment that he had received and that the board had since revoked, less the taxes that Corrente paid on that amount. On August 13, 2008, the board voted to adopt Prof. Ritchie's report and recommendation;[3] however, it did not adopt the recommendation concerning the tax credit.

On October 10, 2008, the board initiated an action in the Superior Court, fashioned as a miscellaneous petition, to confirm its decision pursuant to Sec. 17-189.1(a)(5) of the HSO. Section 17-189.1(a)(5) of the HSO provided that the board "shall initiate a civil action in the [S]uperior [C]ourt for the revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under chapter 17." Corrente also sought confirmation of the board's decision and filed a counterclaim for three "additional requests," including: (1) a lump-sum payment, with interest, for the benefits deriving from his first term of employment that were suspended, from the date of suspension through the date of resumption; (2) a tax credit for any taxes he paid on the revoked amount of pension benefits, deducted from the total amount that he owed to the board; and (3) that Corrente not have to reimburse the city for the amount of pension benefits that were paid to him from the date of his second retirement through the date that his benefits were suspended.

---

[3] Seven board members voted in favor of adopting Prof. Ritchie's recommendations; five members voted against it; and one member was absent.

-4-

## B

### Intervention

On January 29, 2009, the mayor and the city moved to intervene pursuant to Rule 24(a) of the Superior Court Rules of Civil Procedure.[4] They asserted that intervention was appropriate because the interests of the city and its taxpayers were not adequately represented by the existing parties. The board objected to the motion. On March 13, 2009, the trial justice held a hearing on the motion to intervene. The mayor and the city maintained that the interests of the existing parties—the board and Corrente—were "perfectly aligned." They argued for intervention to protect the public interest and to assert their position that a *de novo* review was the appropriate standard of review in civil actions brought by the board in the Superior Court pursuant to the HSO. The board maintained that the interests of the mayor and the city were adequately represented through the two mayoral appointments to the board. The board also disagreed with the assertion that its interests were aligned with Corrente's and insisted that "there's adversity between the existing parties."

In deciding the motion, the trial justice noted the four requirements of Rule 24: (1) the applicant must file a timely application to intervene; (2) the applicant must claim an interest relating to the property or transaction that forms the basis of the action; (3) disposition of the action may impair or impede the applicant's interest; and (4) the current parties to the action do not adequately represent the applicant's interest. *See Hines Road, LLC v. Hall*, 113 A.3d 924, 927 (R.I. 2015). The trial justice determined that the mayor and the city had satisfied the first requirement of Rule 24(a). The trial justice found that the intervenors also met the second

---

[4] The mayor of the city of Providence at the time was David Cicilline. We also note that the record does not contain any resolution or minutes of the city council authorizing the city to intervene.

requirement because "the transaction at issue is of high significance to the City of Providence." With respect to the third requirement, the trial justice determined that disposition of the pending action threatened to impair or impede the ability of the mayor and the city to protect its interest. Specifically, he found that the intervenors' position would not otherwise be raised by the existing parties because the positions of the board and Corrente were "essentially the same with respect to a substantial portion of the recommendation."

Lastly, the trial justice found that neither of the existing parties to the action would adequately represent the interest of the mayor and the city. He first determined that Corrente would not adequately represent the interest of the mayor and the city because they held different positions in the case. With respect to the board, the trial justice deemed it "absurd" to find that it would adequately represent the interest of the mayor and the city because "there is a vast gulf between the position of the [r]etirement [b]oard and the position espoused by the [c]ity and the [m]ayor." Thus, the trial justice granted the motion to intervene.

## C

### Prior Appeals

On April 13, 2009, the trial justice consolidated five related cases involving the board and different plaintiffs, including the action between the board and Corrente, to address three issues related to the HSO: (1) whether a criminal conviction was necessary for the board to take action to reduce or revoke pension benefits pursuant to the HSO; (2) whether the Superior Court had jurisdiction to review civil actions brought by the board pursuant to the HSO; and (3) what standard of review applied in the Superior Court when reviewing civil actions brought by the board.

On September 8, 2009, the trial justice issued a decision in the consolidated cases finding that: (1) a conviction was not a prerequisite to the board taking action to revoke or reduce benefits; (2) its jurisdiction over equity actions along with its declaratory-judgment powers gave the Superior Court jurisdiction; and (3) the appropriate standard of review was that used for administrative appeals, as articulated in G.L. 1956 § 42-35-15 of the Administrative Procedures Act (APA). One of the plaintiffs in the consolidated cases appealed to this Court in *Ryan v. City of Providence*, 11 A.3d 68, 70 (R.I. 2011). In *Ryan*, we vacated the Superior Court's judgment and held that a criminal conviction was necessary before the board could take action to reduce or revoke pension benefits. *Id.* at 76. We did not reach the issue of the standard of review for civil actions brought by the board pursuant to the HSO. *Id.*

After our ruling in *Ryan*, the board again moved to confirm its decision to reduce Corrente's pension benefits. In response, the intervenors objected to the board's motion and moved for summary judgment. On June 23, 2011, there was a hearing on the motions. At the hearing, the intervenors explained that their motion requested that the Superior Court deny the board's motion to confirm and either enter an order that revoked Corrente's pension entirely or remand the matter to the board for further proceedings. On September 28, 2011, the trial justice issued a decision that denied the intervenors' motion for summary judgment and confirmed the board's decision to reduce Corrente's pension.[5]

In his written decision, the trial justice addressed the standard of review to apply to actions brought by the board pursuant to the HSO. He cited to his previous opinion in *Retirement Board of the Employees Retirement System of Providence v. Annarino*, Nos. 02-5196,

---

[5] In his decision, the trial justice noted that the intervenors fashioned their motion as a summary-judgment motion, but he stated that "[t]he [c]ourt, however, having equated the instant matter with an administrative appeal, will treat the party's papers as submitted in connection with G.L. 1956 § 42-35-15(f)."

08-5442, 07-2175, 08-6508, 08-7268, 2009 WL 3328480, at *13 (R.I. Super. Ct. Sept. 8, 2009), where he found a "striking similarity" between the board's process under the HSO and that of the Retirement Board of the Employees' Retirement System for the State of Rhode Island (state retirement board), which is an "agency" subject to the APA pursuant to § 42-35-1. Specifically, the trial justice likened the city board's two-tiered procedure to the state retirement board's two-tiered review process under the APA. He therefore adopted the APA standard of review set forth in § 42-35-15(g). Under the APA's deferential standard of review, the trial justice determined that the board's decision was supported by substantial evidence, not arbitrary and capricious, not unlawful or unconstitutional, and not in excess of its authority. The trial justice also addressed Corrente's three additional requests that he set forth in his answer and counterclaim to the board's motion to confirm. He found that "Professor Ritchie's Report & Recommendation, and the Retirement Board's adoption thereof, specifically contemplated and appropriately dealt with the first and last prong of Mr. Corrente's 'Additional Relief,'" and he therefore declined to modify the adopted recommendation with respect to the first and last requests. The trial justice, however, remanded the tax-credit issue to the board "for a proper determination."

On October 18, 2011, the trial justice entered a judgment that reflected his written decision; he denied the intervenors' motion for summary judgment, confirmed the board's decision, and remanded the tax-credit matter to the board.[6] On November 4, 2011, the intervenors appealed to this Court. Subsequently, the board cross-appealed the trial justice's grant of the motion to intervene.[7]

---

[6] The judgment and the order state that the trial justice granted the board's motion for summary judgment; however, as the trial justice noted in his decision, the board's motion was styled as a miscellaneous petition, which he reviewed as an administrative appeal.

[7] As we noted in *Corrente I*, 111 A.3d at 305, Corrente did not file an appeal and was not a party before this Court.

On appeal, this Court ordered additional briefing on the issue of the Superior Court's subject-matter jurisdiction. *Corrente I*, 111 A.3d at 305. On March 9, 2015, we issued an opinion. *Id.* at 309-10. This Court held that the Superior Court lacked jurisdiction over an action brought by the board pursuant to the HSO and that therefore its judgment was void. *Id.* at 309. However, we concluded that the newly-enacted statute, G.L. 1956 § 36-10.1-5, vested the Superior Court with jurisdiction.[8] *Corrente I*, 111 A.3d at 309. Therefore, this Court remanded the matter to the Superior Court to conduct further proceedings consistent with our opinion or to re-enter its previous judgment. *Id.* at 309-10.

**D**

**Tax Credit**

As noted above, prior to the appeal in *Corrente I*, the trial justice remanded the tax-credit issue to the board to decide. Pursuant to the Superior Court's order, the board discussed the tax-credit issue at two meetings, on April 18, 2012, and May 23, 2012. At the latter meeting, the board voted to deny Corrente's request for a tax credit.[9] On July 31, 2012, Corrente moved in the Superior Court to overrule the board's decision to deny his request for a tax credit.

On January 31, 2013, the same trial justice heard the parties on Corrente's motion. Corrente asserted that the board's decision to deny him a tax credit was "unreasonable." The board maintained that it was not required to grant Corrente a tax credit; rather, it had discretion to decide whether or not to adopt Prof. Ritchie's recommendation to grant a tax credit. The board also distinguished Prof. Ritchie's "off-the-cuff" recommendation regarding the tax credit

---

[8] General Laws 1956 § 36-10.1-5 provides, "[t]he [S]uperior [C]ourt shall have jurisdiction to review any decisions, appeals, or other proceedings initiated pursuant to any municipal ordinance providing for the revocation or reduction of the pension of any municipal employee for circumstances constituting dishonorable service as defined by municipal ordinances."

[9] Five members of the board voted in favor of denying Corrente's request for a tax credit; two members abstained; and six members were absent.

from the recommendation of "a hearing officer who deliberates on it and has a well-reasoned decision." The trial justice reviewed the board's decision and found that it was not an abuse of discretion. Accordingly, on February 1, 2013, he entered an order that denied Corrente's motion to overrule the board's decision to deny his request for a tax credit.

## E

### Present Appeal

Following this Court's remand in *Corrente I*, the trial justice re-entered his previous orders on April 29, 2015. He again granted the mayor and the city's motion to intervene, confirmed the board's decision,[10] denied the intervenors' motion for summary judgment, and denied Corrente's motion to overrule the board's denial of a tax credit.[11] On the same day, the trial justice also entered a corresponding judgment.

On May 8, 2015, Corrente appealed to this Court. On May 11, 2015, the intervenors appealed. On May 14, 2015, the board filed a cross-appeal.

## F

### Arguments on Appeal

Before this Court, Corrente argues that the trial justice erred in denying his motion to overrule the board's decision to deny his request for a tax credit. Specifically, he maintains that the board had to defer to the hearing officer's recommendation and could only reject it if it had an "adequate rationale." Corrente avers that the board rejected Prof. Ritchie's recommendation

---

[10] The trial justice's order stated that he granted the board's motion for summary judgment; however, as previously noted, the board styled its motion as a miscellaneous petition and the trial justice reviewed it as an administrative appeal.

[11] We note that the trial justice's order also provided that "[t]he [m]otion for [s]ummary [j]udgment filed on behalf of Respondent, Frank E. Corrente, is hereby denied." To clarify, the record does not show that Corrente filed a motion for summary judgment in the Superior Court. Rather, it appears that the trial justice was referring to his 2011 decision, wherein he denied two of Corrente's requests for additional relief set forth in his counterclaim.

because of "mere philosophical differences." Accordingly, he asserts that the trial justice should not have confirmed the board's decision with respect to the tax credit.

On appeal, the intervenors argue that the trial justice erred in applying the APA standard of review to the board's action. Rather, they maintain that the Superior Court should employ a *de novo* review to actions brought by the board pursuant to the HSO. In the alternative, the intervenors assert that, even under the APA standard of review, the trial justice erred in confirming the board's decision to reduce Corrente's retirement benefits because the decision was arbitrary, capricious, "affected by error of law," clearly erroneous, and an abuse of discretion.

The board challenges the trial justice's decision to grant the motion to intervene brought by the mayor and the city. It argues that the intervenors failed to satisfy the requirements of Rule 24(a), specifically the fourth requirement that the existing parties to the action do not adequately represent the applicant's interest. The board maintains that intervention was improper because the mayor had to seek a resolution by the city council in order to challenge the board's decision.

**II**

**Standard of Review**

As there are three appeals before this Court that raise different issues, there are multiple standards of review. With respect to the board's challenge to the trial justice's grant of the mayor and the city's motion to intervene, our standard of review is undisputed. "[T]his Court reviews a trial justice's grant of a motion to intervene for abuse of discretion, reversing only if the justice failed to apply the standards set forth in Rule 24(a)(2), or otherwise committed clear error." *Hines Road, LLC*, 113 A.3d at 928 (quoting *Town of Coventry v. Baird Properties, LLC*, 13 A.3d 614, 619 (R.I. 2011)).

-11-

The intervenors and the board dispute the Superior Court's standard of review for an action brought by the board pursuant to the HSO; and consequently the standard of review this Court must employ when reviewing the trial justice's decision is contested. The board asserts that the trial justice correctly applied an APA standard of review, and the intervenors argue that the trial justice should have employed a *de novo* review. Thus, this Court must determine the appropriate standard of review in the Superior Court for the board's action before we can determine our standard of review for the trial justice's decisions.

## III

## Discussion

## A

## Intervention

We will first address the issue of intervention. Rule 24 governs intervention as of right. Rule 24(a)(2) provides in pertinent part as follows:

> "Upon timely application anyone shall be permitted to intervene in an action * * * [w]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

There are four requirements to intervene as of right pursuant to Rule 24(a)(2):

> "[(1)] the applicant files a timely application * * *, [(2)] the applicant claims an interest relating to the property or transaction which is the subject matter of the action, [(3)] the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, *and* [(4)] the applicant's interest is not adequately represented by current parties to the action * * *."
> *Hines Road, LLC*, 113 A.3d at 927 (quoting *Tonetti Enterprises, LLC*, 943 A.2d at 1072-73).

The board maintains that the trial justice erred in granting the mayor and the city's motion to intervene because they did not satisfy the requirements of Rule 24(a)(2). We disagree. In reaching his decision, the trial justice noted Rule 24(a)(2)'s four requirements and analyzed whether each was met. He determined that: (1) the motion to intervene was timely; (2) the transaction that was the subject matter of the action—namely the board's decision to reduce Corrente's pension benefits—was "of high significance to the City of Providence"; (3) disposition of the action would impair or impede the interest of the mayor and the city because it would deprive them of the opportunity to assert their position and argue for a *de novo* review; and (4) the interest of the mayor and the city would not be adequately represented given the significant divide between their position and those of Corrente and the board.

This Court notes that, on appeal, the board does not raise any specific arguments regarding the trial justice's findings with respect to the first, second, and third requirements of Rule 24(a)(2). The board appears to challenge the trial justice's finding on the fourth requirement that the board would not adequately represent the interest of the mayor and the city. Specifically, it cites to federal jurisprudence to support its assertion that a presumption of adequate representation exists when a governmental entity is a party. *See, e.g.*, *Maine v. Director, United States Fish & Wildlife Service*, 262 F.3d 13, 19 (1st Cir. 2001) ("Generally, our decisions have proceeded on the assumption, subject to evidence to the contrary, that the government will adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervenor.").

Because "Rhode Island precedent on this point is sparse," this Court "may properly look to the federal courts for guidance." *Tonetti Enterprises, LLC*, 943 A.2d at 1073. The First Circuit explained that "'[p]resumption' means no more in this context than calling for an

adequate explanation as to why what is assumed—here, adequate representation—is not so." *Director, United States Fish & Wildlife Service*, 262 F.3d at 19. This is a fact-intensive determination that "must be determined 'in keeping with a commonsense view of the overall litigation.'" *Id.* (quoting *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998)). "The trial court, in applying a general rule to specific facts, is usually accorded a measure of deference in making the adequate-representation determination, so long as the court applies the proper legal standards." *Massachusetts Food Association v. Massachusetts Alcoholic Beverages Control Commission*, 197 F.3d 560, 567 (1st Cir. 1999).

Our review reveals that the mayor and the city indeed rebutted this presumption. As the trial justice found, "a vast gulf" exists between the position of the board and that of the intervenors. Given that they could not be more dissimilar, the trial justice determined that the board would not adequately represent the interest of the mayor and the city. *See Cotter v. Massachusetts Association of Minority Law Enforcement Officers*, 219 F.3d 31, 35 (1st Cir. 2000) ("[E]nough likelihood of conflict or divergence of interest exists to defeat any claim that 'the applicant's interest is adequately represented by existing parties' * * * ."). In light of the deference we accord to the trial justice on review, we are satisfied that he did not err or abuse his discretion in finding that the intervenors satisfied Rule 24(a)(2)'s fourth requirement.

The additional argument that the board presses on appeal focuses on the powers of the mayor, as set forth in Article III, § 302 of the City of Providence Home Rule Charter (city

-14-

charter), and those of the board as delineated in Article IX, § 908 of the city charter.[12] The board asserts that Article I, § 104 of the city charter requires the mayor to first obtain authorization from the city council if he or she seeks to challenge the board. Article I, § 104 of the city charter provides that "[a]ll powers of the city shall be exercised in the manner prescribed by this Charter or, if not so prescribed, then in such manner as shall be provided by ordinance or resolution of the city council." Because the charter does not authorize the mayor to bring action against the board, the board maintains that the mayor must do so through resolution of the city council, which he did not do.

Although this is a cogent argument, our review of the record reveals that the board did not raise this argument below, and therefore it is waived. Below, in its memorandum in objection to the motion to intervene, the board merely asserted that "[t]he [m]ayor does not cite any provision in the Providence Home Rule Charter that confers upon him standing to institute a civil action to oppose the decision of his own [b]oard * * * ." Again at the hearing on the motion to intervene, the board did not reference Article I, § 104 of the city charter to support its

---

[12] Article III, § 302 of the City of Providence Home Rule Charter provides, in part:

> "The powers and duties of the mayor shall include, without limitation, the following:
>
> > "(a) To supervise, direct and control the activities of all departments and agencies of city government to the extent and in the manner provided by this Charter and by the ordinances of the city, and the laws of the state."

Article IX, § 908(b) of the city charter provides, in part:

> "The powers and duties of the retirement board shall be, without limitation, the following:
>
> > "(1) To establish rules and regulations for and be responsible for the administration and operation of the city employee retirement systems under its jurisdiction * * * ."

argument that the city council needed to pass a resolution in order for the mayor to challenge the board's decision, although it referenced generally the powers of the mayor and the board. Accordingly, we are of the opinion that the board waived this argument. *See Roach v. State*, 157 A.3d 1042, 1057 (R.I. 2017) ("It is well settled [under our raise-or-waive rule] that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." (quoting *State v. Bido*, 941 A.2d 822, 828-29 (R.I. 2008))). Thus, although we are not entirely persuaded that intervention was appropriately granted in the circumstances of this case, we shall nevertheless proceed to consider the arguments raised by the intervenors on appeal.

## B

### The Superior Court's Standard of Review

The intervenors assert that the trial justice erroneously applied the APA standard of review and instead should have reviewed the board's decision *de novo*. The intervenors dispute the applicability of the APA to the HSO, arguing that "the APA clearly does not apply to a municipal entity such as the [b]oard, which focuses solely on matters of local concern, possesses no statewide authority and performs no statewide function." They maintain that the HSO is more akin to the Rhode Island Public Employee Pension Revocation and Reduction Act (PEPRRA), G.L. 1956 chapter 10.1 of title 36, than to proceedings conducted pursuant to the APA, as both the HSO and PEPRRA instruct their respective boards to initiate a civil action in the Superior Court.

This Court must interpret the HSO's language to determine the appropriate standard of review for civil actions in the Superior Court brought by the board pursuant to the ordinance. We review questions of statutory interpretation *de novo*. *Ryan*, 11 A.3d at 70. "In interpreting the provisions of this ordinance, we begin by giving the terms contained in it their plain and

-16-

ordinary meaning." *Id.* at 74. "When interpreting an ordinance, we employ the same rules of construction that we apply when interpreting statutes." *Morse v. Employees Retirement System of Providence*, 139 A.3d 385, 391 (R.I. 2016) (quoting *Murphy v. Zoning Board of Review of South Kingstown*, 959 A.2d 535, 541 (R.I. 2008)). When the language of the ordinance is clear and unambiguous, "we must enforce it as written by giving the words of the [ordinance] their plain and ordinary meaning." *Id.* (quoting *Murphy*, 959 A.2d at 541). If the ordinance's language is unclear and ambiguous, however, we "examine the entire statute to ascertain the intent and purpose of the Legislature." *Prew v. Employee Retirement System of Providence*, 139 A.3d 556, 561 (R.I. 2016) (quoting *Trant v. Lucent Technologies*, 896 A.2d 710, 712 (R.I. 2006)).

The HSO provided, in relevant part:

> "Sec. 17-189.1. Honorable service, revocation or reduction of retirement benefits of employees committing crime related to public employment.
>
> "(a) *General provisions*.
>
> "(1) Payment of an employee's retirement allowance or annuity or other benefit or payments as provided in chapter 17 shall be for honorable service only.
>
> "* * *
>
> "(4) *Revocation or reduction authorized.* Notwithstanding any other provision of law, any retirement allowance or annuity or other benefit or payment of any kind to which an employee is otherwise entitled to under chapter 17 shall be revoked or reduced in accordance with the provisions of this section if such employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment. Any such conviction or plea shall be deemed to be a breach of the employee's contract with his or her employer.
>
> "(5) *Hearing; civil action.* Whenever any employee is convicted of or pleads guilty or nolo contendere to any crime related to his or her public employment, the

-17-

retirement board shall conduct a meeting, with the employee having the opportunity to be heard, to determine if a recommendation of revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under this chapter is warranted. If the retirement board determines that revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under this chapter is warranted, the retirement board shall initiate a civil action in the [S]uperior [C]ourt for the revocation or reduction of any retirement allowance or annuity or other benefit or payment to which the employee is otherwise entitled to under chapter 17." City of Providence, Code of Ordinances, Ch. 17, Art. VI, Sec. 17-189.1 (as enacted in 1999). [13]

To summarize, the HSO required the board to hold a meeting where the employee had an opportunity to be heard to determine whether a recommendation of revocation or reduction of pension benefits was warranted. If the board determined that either revocation or reduction was justified, it was required to "initiate a civil action in the [S]uperior [C]ourt for the revocation or reduction of any retirement allowance." Art. VI, Sec. 17-189.1(a)(5). We conclude that the HSO's phrase "initiate a civil action" is ambiguous because it lends itself to more than one reasonable meaning; it can encompass either a *de novo* proceeding or an administrative appeal, like a proceeding conducted pursuant to the APA. *Id.*; *see Morse*, 139 A.3d at 392 ("the ordinance is subject to a variety of constructions and is therefore, by definition, ambiguous"). Because the HSO's language is unclear, this Court must "establish[ ] and effectuate[ ] the legislative intent behind the enactment." *Morse*, 139 A.3d at 391 (quoting *Pawtucket Transfer Operations, LLC v. City of Pawtucket*, 944 A.2d 855, 859 (R.I. 2008)).

---

[13] As previously noted, the HSO was amended in 2011. The amended HSO applies only to applications for pension benefits made on or after January 1, 2011; thus, only the pre-2011 HSO is applicable to this case. *See* City of Providence, Code of Ordinances, Ch. 17, Art. VI, Sec. 17-189.1(i) (as amended in 2011).

-18-

In interpreting the HSO, it is instructive to look to comparable Rhode Island state legislation. The trial justice likened the city board's two-tiered review process to that of the state retirement board, which is an "agency" subject to the APA pursuant to § 42-35-1. The state retirement board has regulations that set forth the procedures to follow when hearing "contested cases."[14] *See generally* 120 RICR 10-00 Sec. 1.4(A) (Rhode Island Code of Regulations). For the first tier, the regulations provide for a formal hearing presided over by a hearing officer, during which parties can examine witnesses and present evidence. 120 RICR 10-00 Sec. 1.4(F). After the hearing officer reaches a decision, "[e]ach party to the proceeding shall be given the right to make exceptions, to file briefs and to make oral arguments before the Retirement Board." 120 RICR 10-00 Sec. 1.4(J). The state retirement board, as the second tier, considers the hearing officer's decision and "such other argument as shall be presented by any party to the proceeding," and it then votes on the hearing officer's recommendation. *Id.* The regulations do not provide for an appeal to the Superior Court; however, an employee could appeal pursuant to the APA. *See* § 42-35-15(a) ("Any person * * * who has exhausted all administrative remedies available to him or her within the agency, and who is aggrieved by a final order in a contested case is entitled to judicial review under this chapter.").

The trial justice correctly noted significant similarities between the two boards' processes. Although the city board was not a state agency subject to the APA like the state retirement board, it nevertheless employed a two-tiered review process.[15] After the board

---

[14] A "contested case" is defined as "a matter for which a member requests a hearing because he or she is aggrieved by an administrative action other than a Disability decision." 120 RICR 10-00 §1.4(B)(1)(a).

[15] The HSO also did not require the board to employ a two-tiered review process, it merely provided that: (1) the board must conduct a meeting, where the employee has the opportunity to be heard, to determine if revocation or reduction of pension benefits was warranted and (2) if the board determined that revocation or reduction was warranted, it must initiate a civil action in the

suspended Corrente's benefits, it appointed Prof. Ritchie as the "independent hearing officer." Following the hearing, Prof. Ritchie issued a report and recommendation to the board. The board then voted to adopt the recommendation, and it subsequently brought suit in the Superior Court to confirm its decision. In summary, both the state retirement board and the city board: (1) conduct a hearing before a hearing officer who issues a recommendation to the retirement board, and (2) the retirement board then votes on said recommendation.

The intervenors, however, maintain that the HSO is more similar to PEPRRA. PEPRRA, like the HSO, provides a mechanism for the state retirement board to revoke or reduce the pension benefits of a public official or state employee who "is convicted of or pleads guilty or nolo contendere to any crime related to his or her public office or public employment * * * ." Section 36-10.1-3(b). PEPRRA also requires the state retirement board to initiate a civil action in the Superior Court, just like the HSO. Section 36-10.1-3(b)(1). PEPRRA, however, provides the Superior Court with multiple factors to consider when deciding whether the employee's benefits should be revoked or reduced, including the honorable-service presumption and requirement, the severity of the crime, the financial loss caused by the crime, the degree of public trust placed in that employee, and other factors that justice may require. Section 36-10.1-3(c)(2). Then, the Superior Court decides whether the employee's benefits should be reduced or revoked. Section 36-10.1-3(c)(1). Because PEPRRA cases are not administrative appeals, the APA standard of review does not apply.

Although similarities exist between PEPRRA and the HSO, the two differ in many regards. Notably, PEPRRA does not require the state retirement board to conduct a hearing prior

Superior Court for the revocation or reduction of said benefits. Providence, Code, Ch. 17, Art. VI, Sec. 17-189.1(a)(5). Thus, the city board could have satisfied the HSO's requirements by conducting an informal meeting, with only the board and Corrente present, during which Corrente had an opportunity to be heard.

to initiating an action in the Superior Court. This is a key distinction because, under PEPRRA, absent a *de novo* review in the Superior Court, the employee would not have an opportunity to be heard. In contrast, under the HSO, the employee has an opportunity to be heard prior to the board's determination of revocation or reduction. Consequently, although both PEPRRA and the HSO require their respective retirement boards to "initiate a civil action in the [S]uperior [C]ourt," this is the first and only opportunity for the employee to be heard under PEPRRA, whereas under the HSO the employee has already been heard before the board prior to the Superior Court action. *Compare* § 36-10.1-3 (instructing the state retirement board to commence an action in the Superior Court where the employee will "appear and show cause") *with* Sec. 17-189.1(a)(5) (instructing the city retirement board to first hold a meeting where the employee will have an opportunity to be heard and to then initiate an action in the Superior Court). Therefore, despite the fact that the language of the HSO closely mirrors that of PEPRRA, the actual processes employed by the city retirement board differ from those under PEPRRA.

Consequently, it is our opinion that the HSO is more closely comparable to the two-tiered review process utilized by the state retirement board than to proceedings conducted pursuant to PEPRRA. The trial justice correctly construed the language in the HSO mandating that the board "initiate a civil action in the [S]uperior [C]ourt" as akin to an administrative appeal and appropriately applied the standard of review set forth in the APA.

## C

### Merits

Having concluded that the trial justice correctly employed the APA standard of review to the board's decision, this Court will review his decision using the standard of review for decisions rendered pursuant to the APA. "When this Court reviews the judgment of the Superior

-21-

Court in administrative proceedings, our review is limited to questions of law." *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1048 (R.I. 2008) (quoting *Rossi v. Employees' Retirement System of Rhode Island*, 895 A.2d 106, 110 (R.I. 2006)). "Although this Court affords the factual findings of an administrative agency great deference, questions of law—including statutory interpretation—are reviewed *de novo*." *McAninch v. State of Rhode Island Department of Labor and Training*, 64 A.3d 84, 86 (R.I. 2013) (quoting *Heritage Healthcare Services, Inc. v. Marques*, 14 A.3d 932, 936 (R.I. 2011)).

"This Court does not substitute its judgment for that of the agency concerning the credibility of witnesses or the weight of the evidence concerning questions of fact." *Beagan v. Rhode Island Department of Labor and Training*, 162 A.3d 619, 626 (R.I. 2017) (quoting *Tierney v. Department of Human Services*, 793 A.2d 210, 213 (R.I. 2002)). Pursuant to § 42-35-15(g) of the APA, this Court may:

> "affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
>> "(1) In violation of constitutional or statutory provisions;
>>
>> "(2) In excess of the statutory authority of the agency;
>>
>> "(3) Made upon unlawful procedure;
>>
>> "(4) Affected by other error or law;
>>
>> "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>>
>> "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

"[T]his Court will not weigh the evidence; 'we limit the scope of our review to the record as a whole to determine whether any legally competent evidence exists therein to support the

trial court's decision or whether the trial court committed error of law in reaching its decision.'" *Beagan*, 162 A.3d at 626 (quoting *Rhode Island Temps, Inc. v. Department of Labor and Training, Board of Review*, 749 A.2d 1121, 1124 (R.I. 2000)). We have defined legally competent evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." *Id.* (quoting *Rhode Island Temps, Inc.*, 749 A.2d at 1125).

The intervenors assert that the board's decision to reduce Corrente's pension rather than revoke it was "arbitrary, capricious and affected by error of law." They reference four prior decisions where the board revoked or substantially reduced the pensions of employees for violating the HSO. The intervenors maintain that, in each of those four cases, the hearing officers recommended complete revocations and the board voted to revoke the pension benefits of employees who violated the HSO. They assert that "the facts and circumstances comprising the dishonorable service of each of these four individuals are less compelling and onerous than the facts regarding [Corrente's] dishonorable service."

The board adopted Prof. Ritchie's report and recommendation as its final decision; therefore, we shall look to this report and recommendation to analyze the board's decision to reduce rather than revoke Corrente's pension. As noted in the report, Corrente had two terms of city employment, and his convictions arose out of acts committed during his second term of employment as the director of administration. Professor Ritchie considered the nearly four-year break between Corrente's first term of employment and his second term as the director of administration and determined that "[t]he break between the two terms of [c]ity employment, the drawing of retirement benefits before taking on the second term, and the confinement of any

-23-

alleged dishonorable service to the second term of employment with the [c]ity suggest a division that should be recognized under the [HSO]."

Professor Ritchie further found that, while "[s]ome might argue that [Corrente] deserves more punishment," the HSO is not penal; rather, "[i]t is the breach of employment contract that is the province of the HSO." Accordingly, Prof. Ritchie framed the issue "as whether [Corrente's] dishonorable acts during his second term of employment as [d]irector of [a]dministration breached his earlier and severable contract of employment in the Controller's Office." He concluded that the answer was "logically" no. Professor Ritchie recommended that the board revoke all benefits attributable to Corrente's second term of employment and reinstate the benefits relating to his first term. Our review of the report and recommendation adopted by the board reveals that the board's decision was not arbitrary, capricious, or affected by other errors or law. The HSO provides for either reduction *or* revocation of pension benefits, and the report clearly explains the rationale behind the decision to reduce, rather than revoke, Corrente's pension.

The intervenors point to the board's previous decisions to revoke the pension benefits of four other former employees who violated the HSO. They argue that, under the APA standard of review, once a rule or precedent is established by an entity, such as the board, the entity cannot deviate from that rule or precedent without offering an adequate explanation. The intervenors rely on *Town of Burrillville v. Pascoag Apartment Associates, LLC*, 950 A.2d 435 (R.I. 2008), where this Court held that under general administrative law principles for adjudicative rulemaking, "a presumption exists that an agency will adhere to its settled rule, and the agency must explain a departure from its prior norms." *Id.* at 451. "The grounds for departure from the settled rule 'must be clearly set forth so that the reviewing court may understand the basis of the

-24-

agency's action and so may judge the consistency of that action with the agency's mandate.'" *Id.* (quoting *Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade*, 412 U.S. 800, 808 (1973)). In *Town of Burrillville*, we concluded that the State Housing Appeals Board's failure to adhere to its own definition of a term at issue was arbitrary and capricious because it provided no reason or explanation for its departure from its previously-adopted definition. *Id.*

The present matter differs from the circumstances present in *Town of Burrillville* because, unlike the State Housing Appeals Board, here, the board provided an adequate explanation for its departure from the "settled rule." Corrente was the only city employee before the board who had two distinct terms of employment with the city. Professor Ritchie, in his report and recommendation adopted by the board, considered Corrente's two terms of employment pertinent, especially because "there [was] no allegation of any dishonorable service during Mr. Corrente's first term of employment with the [c]ity." He found that "[t]he break between the two terms of [c]ity employment, the drawing of retirement benefits before taking on the second term, and the confinement of any alleged dishonorable service to the second term of employment with the [c]ity suggest a division that should be recognized under the ordinance." *See Atchison, Topeka & Santa Fe Railway Co.*, 412 U.S. at 808 (holding that an agency may depart from prior norms because "although the rule in general serves useful purposes, peculiarities of the case before it suggest that the rule not be applied in that case").

In our opinion, the board's decision was not arbitrary, capricious, or affected by other errors or law. The HSO contemplates reduction *or* revocation of pension benefits, and the report clearly explains the rationale behind the decision to reduce, rather than revoke, Corrente's pension benefits. Thus, we cannot say that the board's decision was irrational, illogical, or not supported by substantial evidence.

# D

## Tax Credit Issue

On appeal, Corrente asserts that the trial justice erred in confirming the retirement board's decision to deny his request for a tax credit. Specifically, Corrente maintains that the trial justice failed to apply the standard set forth in *Environmental Scientific Corp. v. Durfee*, 621 A.2d 200 (R.I. 1993), to the effect that the board, as the second tier of the administrative process, needed adequate rationale to reject Prof. Ritchie's recommendation that the board provide Corrente with a tax credit. Corrente asserts that this is an error of law which this Court must review *de novo*.

In reviewing the board's decision to deny Corrente a tax credit, this Court employs the same standard that we applied above when we reviewed the board's decision to reduce Corrente's pension benefits. We will not weigh the evidence; rather, our review is limited to "the record as a whole to determine whether any legally competent evidence exists therein to support the trial court's decision or whether the trial court committed error of law in reaching its decision." *Beagan*, 162 A.3d at 626 (quoting *Rhode Island Temps, Inc.*, 749 A.2d at 1124).

We are of the opinion that the board's decision to deny Corrente's request for a tax credit is supported by legally competent evidence. The board discussed the tax credit issue at two different meetings and heard from counsel for the board and for Corrente before it ultimately voted to deny Corrente's request. Members of the board raised various concerns about the tax credit. In particular, some members were troubled by the lack of a quantifiable number for the amount of taxes that Corrente allegedly paid on the pension amount and the lack of any documentation to substantiate his assertion that he paid taxes on the pension benefits. Members of the board also expressed concern with taking money from the city's retirement fund to give

Corrente a tax credit. Additionally, there was uncertainty regarding whether the board was authorized to grant a tax credit.

Corrente failed to assuage the board's concerns; he did not provide any documentation to show that he did in fact pay taxes on the pension benefits nor did he reference any legal authority that sets forth the board's power to grant a tax credit. Looking to the HSO, the pertinent ordinance under which the board reduced Corrente's pension benefits, there is no language that indicates that the board had authority to grant a tax credit. We are confident that the board's decision to deny Corrente's request for a tax credit was supported by legally competent evidence.

Additionally, we reject Corrente's assertion that the trial justice failed to apply the correct standard when reviewing the board's decision regarding the tax credit. Corrente asserts that the trial justice "inexplicably did not use" the standard set forth in *Environmental Scientific Corp.* 621 A.2d at 206. "As we noted in *Environmental Scientific*, in a two-tiered administrative process, the ultimate decision-maker owes deference to the recommendations of the first-tier decision-maker only if those recommendations were based on determinations of witness credibility." *Johnston Ambulatory Surgical Associates, Ltd. v. Nolan*, 755 A.2d 799, 807 (R.I. 2000). "If the recommendations were not based on credibility determinations, the ultimate decision-maker may review the recommendations on a *de novo* basis." *Id.* Here, because Prof. Ritchie's recommendation of a tax credit was not based on the credibility of witnesses, the board did not owe his recommendation deference. Accordingly, the trial justice appropriately reviewed the board's decision under the APA standard of review, determined that the board did not abuse its discretion, and denied Corrente's motion to overrule the board's decision. For the aforementioned reasons, we will not disturb the trial justice's denial of Corrente's motion to overrule the board's decision to deny him a tax credit.

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court and remand the papers thereto.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Retirement Board of the Employees' Retirement System of the City of Providence v. Frank E. Corrente and Mayor of the City of Providence et al. |
| **Case Number** | No. 2015-246-Appeal. No. 2015-244-Appeal. No. 2015-243-Appeal. (PB 08-6508) |
| **Date Opinion Filed** | December 15, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Michael A. Silverstein |
| **Attorney(s) on Appeal** | For Plaintiff: Raymond A. Marcaccio, Esq. |
| | For Defendant: John B. Harwood, Esq. John D. Plummer, Esq. |